**UNITED STATES of America, Appellee,**

v.

**Richard William YOUNG, Defendant–Appellant.**

**No. 97–1413.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1998.

Decided April 6, 1998.

Mark J. Stein, New York City (Michael S. McGarry, Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief), for defendant-appellant.

Marc L. Mukasey, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Dietrich L. Snell, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before: NEWMAN and CABRANES, Circuit Judges, and SQUATRITO,* District Judge.

JON O. NEWMAN, Circuit Judge:

This appeal presents a narrow issue of trial procedure concerning the handling of a jury request made during the course of deliberations. The precise issue is whether the District Court may accept a jury verdict,

---

* Honorable Dominic J. Squatrito, of the United States District Court for the District of Connecticut, sitting by designation.

returned one hour after the jury's request to have part of the charge read back, without responding to, or otherwise inquiring concerning, the jury's request. The appeal also requires consideration of the trial court's authority to entertain the Government's untimely objections to a Presentence Report ("PSR"). Richard W. Young appeals from the July 10, 1997, judgment of the District Court for the Southern District of New York (John G. Koeltl, Judge), convicting him of three counts of possession with intent to distribute phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B), and sentencing him principally to 121 months' imprisonment.

Though receipt of the verdict without a response or further inquiry by the District Judge warrants no relief in this case, we suggest below some considerations that trial judges might appropriately bear in mind should similar circumstances arise. On the second point, we reconfirm the authority of sentencing judges to notice defects in the PSR even though such defects are raised by the Government after the period for objections. Accordingly, we affirm both the conviction and the sentence.

### Background

On three occasions between May 1995 and August 1995, Young sold bottles of PCP to undercover DEA Agent Dave Joseph. Although Agent Joseph made the initial contact, Young called him on various occasions to propose sales or inquire into the status of stalled negotiations. Agent Joseph purchased a total of approximately 2.1 kilograms of PCP from Young.

At trial, the Government's case consisted primarily of Agent Joseph's testimony and recordings of his conversations with Young. The defense presented no witnesses, but argued to the jury that Young had been entrapped by the DEA. At Young's request, the Court instructed the jury on the law of entrapment.

*The jury's note.* Approximately 35 minutes into its deliberations, the jury sent a note to the Court requesting that it "provide the jury with the jury instructions discussing the elements of entrapment." Judge Koeltl

properly shared the note with the parties, and heard argument on whether he should respond by giving the jury a typed copy of the relevant instruction, or instead have the instruction read back to them. *See United States v. Ronder,* 639 F.2d 931, 934 (2d Cir. 1981) (procedure for handling jury inquiries). The Government favored furnishing a written copy, while the defense preferred an oral "readback." The Court decided to have the instruction read back to the jury, and, over a defense objection, concluded that the readback should cover not only the entrapment instruction but also a related instruction explaining that the Government is permitted to use paid informants to uncover criminal activity. The Judge then endeavored to find the reporter who had stenotyped the jury charge and had retained possession of the relevant portion of the stenotyped notes.

However, an hour after the jury had sent out its first note and before the court reporter or the reporter's notes could be located, the jury sent out a second note, announcing that it had reached a verdict. The Court notified the parties, offered counsel the opportunity to inspect the second note, and stated, "I would now call the jury in for their verdict." Defense counsel's only response was "Very well, your Honor." The jury proceeded to announce a guilty verdict.

*The presentence report.* On September 6, 1996, the Probation Department sent the parties copies of the PSR, which stated that Young had sold a total of 300 grams of PCP to Agent Joseph and, based on this figure, calculated a base offense level of 26 and a corresponding sentencing range of 63 to 78 months. On November 29, 1996, four days before the sentencing hearing, the Government notified the Court that the PSR had erroneously underreported the amount of PCP by approximately a factor of seven. Using the corrected amount of PCP, the Government calculated that Young's base offense level should be 32, corresponding to a sentencing range of 121 to 151 months.

At the December 3, 1996, sentencing hearing, Young objected to the Government's belated objection to the PSR, and noted that Fed.R.Crim.P. 32(b)(6)(B) requires all objec-

tions to be made within 14 days of receipt of the PSR. The Court subsequently issued a written opinion, ruling that despite the Government's failure to file timely objections to the PSR, the Court retained "an independent obligation to ensure that the sentence imposed on Young is correct." *United States v. Young,* No. 95 Cr. 851, 1996 WL 737197, at *2 (S.D.N.Y. Dec.24, 1996). Accordingly, the Court directed the Probation Department to prepare a revised PSR, and gave the parties 14 days to make any objections to the revised PSR. The revised PSR reflected the full 2.1 kilogram quantity of PCP, and calculated a sentencing range of 121 to 151 months. Young ultimately conceded the accuracy of the revised quantity and sentencing calculations. The District Court imposed a sentence principally of 121 months' imprisonment, followed by four years' supervised release.

### Discussion

1. The Jury's Request

■ Young contends that the District Court's failure to honor the jury's request for a readback before taking the verdict amounted to prejudicial error requiring reversal. We disagree.

■ A readback of portions of the trial record is a matter committed to the sound exercise of a trial court's discretion, *see, e.g., United States v. Escotto,* 121 F.3d 81, 84 (2d Cir.1997) (trial testimony); *United States v. Arboleda,* 20 F.3d 58, 61 (2d Cir.1994) (summation), and this same principle applies to readbacks of jury instructions, *see United States v. Arias–Santos,* 39 F.3d 1070, 1075–76 (10th Cir.1994). We have expressed a preference for honoring a jury's request for readbacks when made by a deliberating jury, *see United States v. Criollo,* 962 F.2d 241, 243–44 (2d Cir.1992), and we have noted that to promote the interest in informed jury decision-making without unduly delaying court proceedings, trial judges should bear

several considerations in mind. These include the jurors' need to review the material before reaching a verdict, assessed against the difficulty in locating the specific material requested, the possibility of undue emphasis on any portion of the record, and the possibility of undue delay in the trial. *See Escotto,* 121 F.3d at 84; *Criollo,* 962 F.2d at 243.

■ These considerations will normally favor complying with a jury's request for a readback of portions of the instructions. It is obviously important to dispel any uncertainty in the jurors' minds concerning the content of the instructions, and absent a request for a readback of a substantial portion of a lengthy charge,[1] the time and effort needed to comply with the request would ordinarily be minimal.

■ In this case, an hour passed before the reporter's notes could be located, and the jury informed the Court that it had reached a verdict. It is possible, as the Government suggests, that the jurors changed their minds and decided that they no longer needed to rehear the entrapment instruction. However, it is also possible that the jurors, not having been informed that the District Judge was going to read back the entrapment instruction as soon as the reporter's notes were located, concluded that the Judge had decided not to honor their request. The latter possibility is disquieting, and it would have been better practice for the trial court, upon receipt of the first note, to have told the jury (in open court or through a reply note) that its request would be honored but that some delay might ensue. Had that been done, we could safely assume that the jurors decided that the readback was no longer desired.

Nevertheless, the failure to convey such information to the jury and the receipt of the verdict without further reference to the readback request are not grounds for reversal. Once the jury announced its readiness to return a verdict, it was up to defense counsel to decide whether to accede to having the

---

1. Where the trial court is unwilling to meet the jury's request for extensive readbacks of the charge, the court could provide the jury with a written transcript of the charge. *See United States v. Russo,* 110 F.3d 948, 953–54 (2d Cir. 1997) (trial court has discretion to provide jurors

with written instructions, in addition to reading the instructions orally); *see also Escotto,* 121 F.3d at 84–85 (district court has discretion to provide the jury with trial transcripts, either upon request or in lieu of a requested readback).

verdict promptly announced or to request the Judge to ask the jurors if they still wished the readback. Counsel evidently preferred to have the verdict announced without any reference to the readback request. That was an entirely reasonable strategic decision, since counsel might have anticipated an acquittal and wished no step taken that might undo such a verdict.

In the absence of either an objection to receipt of the verdict or a request for further inquiry of the jury concerning a readback, the trial court's procedure cannot warrant reversal unless it constitutes plain error. *See* Fed.R.Crim.P. 52(b); *cf. United States v. Delano*, 55 F.3d 720, 732 (2d Cir.1995) (review for plain error where defendant failed to object to trial court's decision to provide jury with written text of instructions). If error occurred here at all, it surely was not a "plain" error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (bracketing, internal quotation marks, and citations omitted).[2]

2. Government's Late Objection to the PSR

■ Young contends that the Government's objection to the PSR was untimely and should not have been considered by the District Court. He relies on Fed.R.Crim.P. 32(b)(6)(B), which gives the parties 14 days after receipt of the PSR to raise objections.

■ Though a court could, in its discretion, deem a party to have forfeited any objection to the PSR by its failure to file a timely objection or to show good cause for a late filing, *see United States v. Jones*, 70 F.3d 1009, 1010 (8th Cir.1995), a sentencing judge is not obliged to accept all unchallenged findings and recommendations made in the PSR. *See United States v. Miller*, 116 F.3d 641, 685 (2d Cir.1997). The sentencing court may impose sentencing enhancements belatedly suggested by the Government and not con-

tained in the PSR, *see id.*, provided the defendant is afforded an adequate opportunity to respond to the Government's late submission and any revision of the PSR. Young and the Government were afforded a 14-day period to make objections to the revised PSR, and Young does not challenge on appeal the facts or the arithmetic underlying the Probation Department's revisions.

### Conclusion

The judgment of the District Court is affirmed.

---

**2.** Young's reliance on cases in which convictions were reversed because of a trial court's total or partial failure to respond to jury inquiries, *see United States v. Bolden*, 514 F.2d 1301, 1309 (D.C.Cir.1975), and *United States v. Jackson*, 257 F.2d 41, 43 (3d Cir.1958), is unavailing. All such cases inevitably turn on their precise circumstances. Moreover, in the pending case, the District Court endeavored to respond to the jury's request, but the announcement that a verdict had been reached occurred during the one hour delay before the reporter's notes could be located.