07-1180-cr
United States v. White

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2007

Argued: May 30, 2008                                    Decided: January 9, 2009

Docket No. 07-1180-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

ANTHONY WHITE,

*Defendant-Appellant*.

_____

Before:          KEARSE, SACK, LIVINGSTON, *Circuit Judges*.

Defendant-appellant Anthony White appeals from a judgment of the United States District Court for the Western District of New York (Larimer, J.), sentencing him to eighty-four months' imprisonment after a jury trial for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). White contends principally that: (1) the district court erred in declining to give a jury instruction on the affirmative defenses of necessity or innocent/fleeting possession; (2) he is entitled to a new trial because the government used its peremptory challenges to exclude two African American women from the jury, contrary to *Batson v. Kentucky*, 476 U.S. 79 (1986); and (3) his

sentence is unreasonable, primarily because the district court erred in departing upward to criminal history category VI based on a conclusion that criminal history category V underrepresented the seriousness of White's past criminal conduct and the likelihood that he would commit other crimes in the future.

Affirmed.

ROBERT G. SMITH, Assistant Federal Defender, Western District of New York (Jay S. Ovsiovitch, *of counsel*), *for Defendant-Appellant*.

ROBERT A. MARANGOLA, Assistant United States Attorney, *for* Terrance P. Flynn, United States Attorney, Western District of New York, *for Appellee*.

LIVINGSTON, *Circuit Judge*:

Defendant-appellant Anthony White appeals from a judgment of the United States District Court for the Western District of New York (Larimer, J.), sentencing him to eighty-four months' imprisonment after a jury trial at which he was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). White contends principally that: (1) the district court erred in declining to give a jury instruction on the affirmative defenses of necessity or innocent/fleeting possession; (2) he is entitled to a new trial because the government used its peremptory challenges to exclude two African American women from the jury, contrary to *Batson v. Kentucky*, 476 U.S. 79 (1986); and (3) his sentence is unreasonable, primarily because the district court erred in departing upward to criminal history category VI based on a conclusion that criminal history category V underrepresented the seriousness of White's past criminal conduct and the likelihood that he would commit other crimes in the future. For the reasons that follow, we affirm.

## BACKGROUND

White was charged on June 28, 2005 with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The government's evidence at trial established that on June 10, 2005, at 4:36 p.m., one Catherine Mobley called 911, gave her address as 494 Seward Street in Rochester, New York, and told the operator that her boyfriend had hit her. She also indicated that no weapons were involved in the incident. Officer Francis Archetko of the Rochester Police Department responded to a dispatch for family trouble at 494 Seward Street, which he received "at about 4:40 [p.m.] or so," arriving at the address within minutes. He observed Mobley standing in the driveway and spoke with her briefly. During this conversation, Mobley reported that her live-in boyfriend, Anthony White, had hit her during an argument and she requested that Officer Archetko ask White to leave the residence. Mobley also told Officer Archetko that White was currently in the first-floor bedroom and that there were no weapons inside the residence. She did not indicate to the officer whether other people were inside the home.

When Officer Archetko entered the house, he knocked on the partially opened door to the bedroom, but did not announce his presence or otherwise speak. He heard a male voice say, "[C]ome in." Officer Archetko then opened the door and saw White sitting on the edge of a bed next to two .12 gauge shotgun shells. White was holding a sawed-off shotgun by the trigger area with his right hand while he loaded a round into the magazine tube with his left. He was aiming the shotgun at the doorway where Officer Archetko stood. Officer Archetko immediately pulled his service weapon, pointed it at White, and ordered White to drop the shotgun. White complied with this demand and Officer Archetko then arrested him. The round that Officer Archetko observed White load into the

3

shotgun was still in the weapon when Officer Archetko retrieved both the weapon and the shells on the bed. According to Officer Archetko, no one other than White was in the house at the time of this incident.

John Clark, a firearms examiner for the Monroe County Department of Public Safety, demonstrated for the jury how to load and unload the weapon recovered from White. He also testified that he had test-fired the weapon using two of the recovered shells and that both shells discharged successfully.

The defense case consisted entirely of White's testimony. White testified that on June 10, 2005, he and Mobley were in their house at 494 Seward Street, as was Mobley's youngest son, who was about seven years old at the time. According to White, he and Mobley got into a fight over his conversation with another woman. White locked himself in the bathroom to "keep from hearing" Mobley's voice. When he emerged about twenty-five minutes later, Mobley was pointing a shotgun at him. White testified that Mobley pulled the trigger, but the gun did not fire. White then knocked the gun out of her hand, at which point Mobley fled the house.

White testified that he next picked up the gun and took it into the bedroom so that Mobley's young son—who "saw the whole thing" from the kitchen and had been pleading for his mother to put the gun down—would not "play[] cops and robbers and stuff" and "get the gun, [and] pull the trigger and kill his self or . . . blow his feet off." According to White, when he went into the bedroom, he put the gun on the floor and began removing the shells. He removed two shells from the shotgun with scissors, but was unable to get the third shell out because it was "stuck." White testified that he intended to give the shotgun to the police, that he did not call the police because the

4

phone was on the porch, and that the "[o]nly thing [he] could think of was safety." While he was attempting to remove the third shell, he heard a knock on the bedroom door to which he responded that he "was coming." The police entered and arrested him. White denied pointing the weapon at Officer Archetko.

Before White was cross-examined, the government proffered evidence that White previously had engaged in several incidents of domestic violence in which he used or threatened to use firearms, including one occasion on which he brandished a gun and threatened to kill a girlfriend and a second in which he placed a gun to the head of a girlfriend's daughter and threatened to kill her. The government argued that such evidence was admissible pursuant to Federal Rule of Evidence 404(b) to show criminal motive and intent and, more specifically, to rebut the implication that White had possessed the shotgun innocently. The district court refused to allow admission of this evidence, ruling that White's reason for possessing the weapon was not relevant and opining, preliminarily, that the defense had not put on evidence sufficient to require an instruction as to a defense of necessity or fleeting possession.

On cross-examination, White acknowledged that he was at all times aware that the object that he had picked up was a shotgun. He also admitted that he had been convicted in state court in 1995 of possessing stolen property and in 2000 of third-degree rape, both of which crimes he knew to be felonies. He further indicated that when he initially picked up the shotgun in the living room he used a child's shirt to do so in order to avoid getting his fingerprints on the weapon since he did not know where it came from.

After the close of evidence, White requested that the jury be instructed on both the necessity

and fleeting-possession defenses, based on the evidence that White had possessed the gun for only "three and a half minutes after the incident [with Mobley] was done."[1] The district court denied the request. It observed that this Court has recognized neither a necessity nor a fleeting-possession exception to felon-in-possession liability. The court concluded further that neither defense, even if it existed, was supported by the record, since White's possession was not fleeting and he was not shown to be in imminent danger after Mobley dropped the gun and left the house.

The district court charged the jury, specifically advising that the Government was required to prove three elements to establish that White had violated 18 U.S.C. § 922(g)(1) and affirming that each of these elements must be shown by "proof beyond a reasonable doubt."[2] The court noted that the defendant's motive or reason for possessing a firearm was not an element of the crime and that the Government need not prove or disprove "any particular reason or motivation" for possessing a weapon. An hour into deliberations, the jury sent a note asking, among other things, whether there are "any exceptions to the law of possession [such as] for self-defense purposes." With respect to

---

[1] The defense arrived at this estimate based upon Officer Archetko's testimony that it took him about two minutes to respond to 494 Seward Street after receiving the dispatch and that his conversation with Mobley lasted "[a]pproximately a minute." This estimate, however, does not take account of the time that elapsed between Mobley's 911 call at 4:36 p.m. and the dispatch to Officer Archetko at "about 4:40 or so."

[2] The three elements described by the district court were as follows: (1) the defendant "was convicted in any court of a crime punishable by a term [of imprisonment] exceeding one year"; (2) the defendant "knowingly possessed the firearm"; and (3) "the firearm . . . was in or affecting [interstate] commerce." These elements correspond directly to the statutory definition of the crime with which White was charged. *See* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . .").

this question, White asked the court to charge the jury "as a law professor would," describing hypothetical scenarios in which a fleeting-possession or necessity defense might apply. The court again refused to give an instruction on these defenses, but responded to the jury's question as follows:

> In the universe there may be [exceptions to the law of possession], depending on the facts of the case. But in this case, there are none that apply here. If there were defenses, you would have been instructed on them.
>
> And I don't think it advances to discuss possible circumstances. The evidence here, the Court has determined, does not support any possible defense. The statute contains no defenses and the evidence otherwise is not such that there is anything to instruct you about.

White objected to this instruction, arguing that the court had essentially directed a verdict against him when it stated that it had "determined" that the evidence "does not support any possible defense." White did not request a mistrial, however, but instead asked that the district court instruct the jury to "focus on the elements of possession" and "not on whether there are or are not exceptions." In response to this request, the district court instructed the jury as follows:

> I guess just try to focus here a bit. The Court has consistently spoken about the elements of the offense that control here, and I think that's what you should and must focus on, the elements, and not on whether there are exceptions or defenses.
>
> I mean, the law that you heard from me that controls this case is what you heard on the facts of this case. There is no other law. In each case the instructions are given depending on the facts of the particular case.
>
> So I think that's what I intend to say at this point. Focus on the elements and the law that I gave to you is the universe of the law on this particular case involving acts that occurred on June 10th,

7

2005.

White raised no objection to this supplemental charge. Less than an hour later, the jury returned a guilty verdict. The district court ultimately imposed a prison sentence of eighty-four months. This appeal followed.

## DISCUSSION

*I. Jury Charge*

White's principal claim on appeal is that the district court erred in failing to instruct the jury on affirmative defenses, which White describes variously as the defenses of "necessity" or "justification," as well as "fleeting possession" and "innocent possession."[3] He claims also that he was prejudiced by the district court's response to the jury's question regarding "exceptions to the law of possession."

"To secure reversal based on a flawed jury instruction, a defendant must demonstrate both

---

[3]White argues at various points that he was entitled to a jury instruction on necessity *or* justification, using the terms interchangeably. We note that "justification" traditionally encapsulates a broad class of defenses, of which "necessity" is but one. *See United States v. Leahy*, 473 F.3d 401, 406 (1st Cir. 2007) (noting that the defense of "justification" encompasses several more specific affirmative defenses recognized at common law); *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993) (distinguishing between justifications and excuses, and noting that "necessity" is one kind of justification); Model Penal Code § 3.02 (describing justification as an affirmative defense arising when "the actor believes [otherwise criminal conduct] to be necessary to avoid a harm or evil to himself or to another"); 2 Wayne R. LaFave, *Substantive Criminal Law* 115-87 (2d ed. 2003) (discussing doctrines falling under the heading "justification"). Some Circuits, however, have regularly used the term justification in the felon-in-possession context to refer to an affirmative defense comparable to the traditional defense of necessity, *see, e.g., United States v. Hargrove*, 416 F.3d 486, 489-90 (6th Cir. 2005)*; United States v. Deleveaux*, 205 F.3d 1292, 1296-97 (11th Cir. 2000); *Newcomb*, 6 F.3d at 1133, and we will mirror our sister Circuits in using the words interchangeably here.

error and ensuing prejudice." *United States v. Quinones*, 511 F.3d 289, 313-14 (2d Cir. 2007), *cert. denied*, 129 S. Ct. 252 (2008). Although we review de novo a claim of error in jury instructions, *id.* at 314, including a claim that the district court improperly declined to instruct the jury regarding an affirmative defense, *see United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005), "we will reverse only where the charge, viewed as a whole, 'either failed to inform the jury adequately of the law or misled the jury about the correct legal rule,'" *Quinones*, 511 F.3d at 314 (quoting *United States v. Ford*, 435 F.3d 204, 209-10 (2d Cir. 2006)). A federal court may decline to instruct on an affirmative defense, moreover, "when 'the evidence in support of such a defense would be legally insufficient.'" *United States v. Williams*, 389 F.3d 402, 404 (2d Cir. 2004) (quoting *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990)); *see also Gonzalez*, 407 F.3d at 122 ("A defendant is entitled to an instruction on an affirmative defense only if the defense has 'a foundation in the evidence.'" (quoting *United States v. Podlog*, 35 F.3d 699, 704 (2d Cir. 1994))).

### A.    Affirmative Defenses

Turning first to White's claim that the jury should have been instructed on the defense of "necessity," we conclude that even assuming such a defense is generally available in the felon-in-possession context – a question we need not decide today – White was not entitled to an instruction in the circumstances of this case. The district court therefore did not err in declining to give one.

We have not definitively recognized the existence of a necessity defense to a charge under 18 U.S.C. § 922(g)(1). *See Williams*, 389 F.3d at 404-05 ("Although the language of 18 U.S.C. [§] 922(g)(1) does not provide for a necessity defense, we will assume, without deciding, that

persons charged with violating 18 U.S.C. [§] 922(g)(1) may assert such a defense."); *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490 (2001) ("[I]t is an open question whether federal courts ever have authority to recognize a necessity defense not provided by statute."). Courts that have recognized such a defense in the felon-in-possession context, however, have established the following elements: (1) that the defendant or a third person was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law by taking possession of a weapon; and (4) that there was a direct causal relationship between the criminal action – possessing the weapon in violation of § 922(g)(1) – and the avoidance of the threatened harm. *See, e.g.*, *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000).[4] In addition, the defendant must establish that he did not maintain possession of the weapon at issue any longer than absolutely necessary. *See United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990), *cited by Williams*, 389 F.3d at 405. The courts that have recognized justification as a defense to a

---

[4] *Deleveaux* describes the first element of the justification defense in terms of self-defense – requiring proof that "*the defendant* was under unlawful and present, imminent, and impending threat of death or serious bodily injury." *Deleveaux*, 205 F.3d at 1297 (emphasis added). Courts have held, however, that the "imminent danger" element may be met by showing that some person other than the defendant was in harm's way. *See Newcomb*, 6 F.3d at 1135-36 (allowing the defense where the defendant allegedly disarmed his girlfriend's son to protect a third party from harm); *United States v. Paolello*, 951 F.2d 537, 541-43 (3rd Cir. 1991) (finding the defense available where the defendant allegedly knocked a gun out of an attacker's hand to protect a third party and then picked the gun up to prevent the attacker from getting it); *see also United States v. Toney*, 27 F.3d 1245, 1249 (7th Cir. 1994) (noting that the defendant was entitled to receive a justification instruction where he allegedly wrestled a gun away from his girlfriend to prevent her suicide).

felon-in-possession charge have held that the defense must be construed "very narrowly." *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995); *Singleton*, 902 F.2d at 472; *accord United States v. Paolello*, 951 F.2d 537, 541-42 (3d Cir. 1991) (adopting a "restrictive view" of the defense). As the Eleventh Circuit has stated, the defense "is available in § 922(g)(1) cases in only extraordinary circumstances." *Deleveaux*, 205 F.3d at 1297; *see also Perrin*, 45 F.3d at 874 ("It has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense." (citing *Singleton*, 902 F.2d at 472)).

In this case, White's testimony was the only evidence offered in support of a necessity defense. This testimony was clearly sufficient on its own to establish that White was in imminent danger at the moment Mobley pointed the gun at him. The problem with White's position, however, is that once he knocked the gun out of Mobley's hand and she ran out of the house, any immediate danger to White was dispelled. *See United States v. Lemon*, 824 F.2d 763, 765 (9th Cir. 1987) (finding no imminent danger once the defendant's assailant had left the scene); *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983) (holding that the defense was not made out where the allegedly threatening party left the building and the defendant pursued him). White testified that he picked up the weapon and carried it into the bedroom in order to ensure that Mobley's young son did not obtain possession of it and come to harm. The question thus becomes whether a loaded shotgun lying on the living room floor created such an imminent danger to Mobley's seven-year-old son that White was justified in taking possession of the gun and unloading it in another room.

We find it doubtful that the threat was sufficiently imminent. Those decisions that have

11

required a jury instruction as to justification have almost uniformly done so in circumstances where the defendant presented evidence suggesting that he took possession of a weapon when confronted with an immediate, compelling, and direct threat to human life. *See, e.g., United States v. Mooney*, 497 F.3d 397, 406-08 (4th Cir. 2007) (finding the justification defense to be potentially available where the defendant took the weapon from a third party with known violent tendencies who allegedly put a loaded firearm to the defendant's head); *Paolello*, 951 F.2d at 539, 542-43 (requiring the instruction where the defendant allegedly seized the weapon from a man who had harassed him in a bar, punched his stepson in the face, discharged the weapon, and then struggled with the defendant over it); *United States v. Panter*, 688 F.2d 268, 269, 271-72 (5th Cir. 1982) (holding that a justification instruction was required where the defendant allegedly took possession of a weapon as a convicted murderer threatened to kill him, stabbed him with a pocket knife, and then pinned him to the floor). In contrast, the threat of harm to Mobley's son was considerably more attenuated and speculative in nature. According to White's testimony, Mobley's son was in another room. There is nothing in the record indicating that the child had expressed an intention to handle the shotgun or that, having pleaded with his mother to put the gun down, he would after her departure attempt to pick it up and play with it. White's testimony thus suggests that he acted to prevent a cognizable, but not imminent, risk to human life.

We need not decide the imminence-of-threat question in the circumstances of this case, however, since even assuming White was fully justified in initially picking up the weapon to keep it from Mobley's son, his testimony failed to show that he maintained possession of the shotgun only for as long as necessary to dispel any threat. That is, even assuming an imminent threat existed after

12

Mobley fled, White perhaps was justified in carrying the gun into the bedroom and, for example, putting it on a high closet shelf, locking the door to the room, or otherwise placing the gun outside of the reach of a seven-year-old child. But it cannot be said that White's possession of the shotgun continued to be justified during the time it took for White to pick up the weapon carefully so as to avoid getting his fingerprints on it; to locate scissors to use in dislodging the gun's shells; and to remove two shells while working on a third. This amount of time was sufficiently extended for Mobley to call 911 and for Officer Archetko to respond to that call, have a conversation with Mobley, and find White sitting on the bed with the gun in hand. *See Williams*, 389 F.3d at 404-05 (noting that, even if a threat of death or serious bodily injury existed when the defendant took a weapon from a teenager to prevent it from being used, no such threat existed when the defendant was confronted by police). We conclude that the "very narrow" doctrine of justification, if available, would not apply in this case.

White also argues that the district court erred in refusing to instruct the jury on the defense of "fleeting" or "innocent" possession. We have no difficulty concluding that White was not entitled to a jury instruction on this defense. In *United States v. Paul*, 110 F.3d 869 (2d Cir. 1997), we suggested in dicta that circumstances "may be imagined" where possession of a firearm by a felon is "too fleeting" to violate 18 U.S.C. § 922(g)(1). We offered the example of a felon who, noticing "a police officer's pistol slip to the floor while the officer [is] seated at a lunch counter," picks up the weapon, and immediately returns it to the officer. *Id.* at 872. In this case, however, White did not possess the shotgun for mere seconds, but picked it up, carried it to another room, began handling ammunition, and all told, had the gun in hand for at least the time required for Mobley to contact 911

13

and for Officer Archetko to respond to Mobley's call. White therefore "extended his possession of a firearm far beyond the fleeting sort of possession we illustrated in *Paul*." *Williams*, 389 F.3d at 405. Accordingly, even if we were to recognize the availability of a fleeting-possession defense to a § 922(g)(1) charge, the evidence in this case would not have justified a jury instruction on that defense.

With respect to "innocent possession," some courts have treated this defense interchangeably with the various justification defenses. *See, e.g., United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003) ("[W]e previously have limited an 'innocent possession' defense to a § 922(g)(1) charge to situations in which the elements of a justification defense . . . are present."). The District of Columbia Circuit, however, has suggested that the innocent possession defense is distinct. *See United States v. Mason*, 233 F.3d 619, 622-24 (D.C. Cir. 2000). According to that court, "[t]here are two general requirements that must be satisfied in order for a defendant to successfully invoke the innocent possession defense. The record must reveal that (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory— *i.e.*, in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *Id.* at 624.

We need not decide here whether to recognize an innocent possession defense in the section 922(g)(1) context, or whether we would characterize it as coextensive with a fleeting-possession defense or as sui generis. Since White failed to adduce sufficient evidence that he possessed the shotgun only for as long as necessary to vitiate a potential threat to Mobley's child, he was not entitled to a jury instruction on fleeting possession as we have, in dicta, previously discussed it, or

14

on innocent possession as we might define it. Accordingly, since the affirmative defenses cited by White lacked sufficient foundation in the evidence, it was appropriate for the district court to decline to charge the jury on those defenses.

## B.     Supplemental Charge

White also argues that the district court's instructions to the jury in response to its question asking if there are "exceptions to the law of possession" require reversal. This contention is subject only to plain error review. As previously noted, White requested and received a specific curative instruction immediately following the district court's supplemental charge and, after the district court's recitation of that curative instruction, did not press any further objection. When a party objects to a jury charge and the district court subsequently gives a curative instruction to which the party does not further object, we review the charge, including the curative instruction, only for plain error. *See United States v. Salameh*, 152 F.3d 88, 144-45 (2d Cir. 1998). "This standard requires there to be '(1) error, (2) that is plain, and (3) that affect[s] substantial rights.'" *See United States v. Rossomando*, 144 F.3d 197, 200 (2d Cir. 1998) (alteration in original) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Even if each of these conditions is met, we may only exercise our discretion to consider a "forfeited error . . . if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson*, 520 U.S. at 467 (second alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Here, we find no error, much less error that is plain.

15

White argues that the district court erred in stating that 18 U.S.C. § 922(g)(1) "contains no defenses" because many Circuits have recognized affirmative defenses to felon-in-possession liability even though these defenses do not appear in the statute. *See generally Mooney*, 497 F.3d at 403 (citing cases). This challenge is without merit. Even if we assume that the defenses invoked by White should be read into § 922(g)(1), the district court's charge was not erroneous. A district court need not instruct on an affirmative defense where the defendant has failed to provide a sufficient evidentiary foundation. *See Gonzalez*, 407 F.3d at 122; *Williams*, 389 F.3d at 404. Because White did not adduce sufficient evidence to have the issue of justification considered by the jury, it was not erroneous for the district court to eliminate from its charge defenses that did not pertain to White's case. Moreover, even if the district court *did* err by stating that there are no affirmative defenses applicable to § 922(g)(1), White could not conceivably have been prejudiced by such an error since these potential defenses did not apply to him.

White also asserts that it was improper for the district court to state that "[t]he evidence . . . does not support any possible defense," because this statement suggested that the court had assessed the credibility of White's testimony and found it wanting. To the extent the jury could have misinterpreted the supplemental charge as going to an assessment of White's credibility, however, the curative instruction refocused the jury on the elements of possession and made no mention of White's credibility. We ordinarily presume that the jury adheres to curative instructions and see no reason to depart from that general rule here. *See Salameh*, 152 F.3d at 144; *United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990). Accordingly, we find no error, let alone plain error, in the district court's supplemental charge.

16

*II.     Jury Selection*

White next asserts that he is entitled to a new trial on the ground that the government, in exercising its peremptory challenges during jury selection, discriminated against him on the basis of race in violation of his right to equal protection. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). The government argues that White failed to preserve this challenge and that it is, in any event, meritless.

In assessing a defendant's claim that the government has exercised its peremptory challenges in a discriminatory manner, a district court engages in a three-step analysis. It first must consider whether the defendant has made a prima facie showing that the government has exercised a peremptory challenge on the basis of a prohibited ground. If the court determines that the defendant has done so, it must then decide whether the government has satisfied its burden of offering a neutral explanation for the challenge. If the court concludes that this burden has been met, it must then determine, based on all the facts and circumstances, whether the defendant has carried his burden of proving purposeful discrimination. *See United States v. Thompson*, 528 F.3d 110, 115 (2d Cir. 2008) (citing *Batson*, 476 U.S. at 96-98), *cert. denied*, 129 S. Ct. 218 (2008); *see also Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("[T]he ultimate burden of persuasion regarding racial motivation rests with . . . the opponent of the strike."). We have held that "the ultimate question of discriminatory intent represents a finding of fact that will be set aside only if clearly erroneous." *Thompson*, 528 F.3d at 115 (quoting *United States v. Taylor*, 92 F.3d 1313, 1326 (2d Cir. 1996) (internal quotation marks omitted)). "This is so in large part because a court's determination will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and

17

an assessment of their credibility." *United States v. Brown*, 352 F.3d 654, 661 (2d Cir. 2003) (alteration and internal quotation marks omitted).

In the first round of jury selection in this case, the government used a peremptory challenge to exclude juror number thirty, an African American woman. In a subsequent round, the government attempted to challenge juror number twenty-six, also an African American woman. Only one African American venireperson remained. White, who is African American, objected following the challenge of juror number twenty-six, claiming that the government's attempt to exclude two out of three African Americans in the venire indicated a pattern of racial discrimination.

The district court determined that White's initial burden of making a prima facie showing of discrimination had been met, and asked the government for an explanation for its challenge of juror number twenty-six. The government averred that it had not used its challenges on the basis of race. It explained that it had challenged juror number twenty-six because she had "an angry look that she wasn't happy to be here," and because "she had her eyes closed for extended periods of time" as if she had been sleeping. The government explained further that it had challenged juror number thirty because she had stated during questioning that she had been a witness in another criminal trial, testifying in support of a defendant's self-defense claim. Finally, the government stated that it had no intention of challenging juror number twenty, the remaining African American in the venire.

The district judge noted that he, too, had observed juror number twenty-six with her eyes closed during questioning. Defense counsel did not dispute this observation, but stated that he had been too far from juror number twenty-six to observe her eyes. The defense argued further that the district court should not find a juror's unhappiness to constitute a valid reason for the exercise of a

18

peremptory challenge. The judge then stated that even though the challenge of juror number thirty was "not before the Court," and that "there was no objection as to [juror number thirty]," the government had offered a legitimate, nondiscriminatory reason for making that challenge "in light of what could develop as a defense here." The judge, stating that he was unconvinced by the defense's objection to the government's attempt to strike juror number twenty-six, found that the government had not used its peremptory challenges in a discriminatory manner.

We need not decide on this record whether the government is correct in arguing that White failed to preserve his *Batson* challenge. Even assuming that he did preserve his challenge, the record in the present case persuades us that the district court did not clearly err in finding that the government's use of peremptory challenges was not motivated by discriminatory intent. As to juror number twenty-six, the government's concern about a juror's inattentiveness or angry demeanor constitutes an acceptable reason for the exercise of a peremptory challenge. *See Messiah v. Duncan*, 435 F.3d 186, 200 (2d Cir. 2006); *Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005); *United States v. Rudas*, 905 F.2d 38, 41 (2d Cir. 1990). Juror number thirty's earlier experience testifying in support of a criminal defendant's self-defense claim likewise was a valid ground for striking her. *Cf. United States v. Douglas*, 525 F.3d 225, 239-41 (2d Cir. 2008) (accepting the prosecutor's explanation that a stricken venireperson had served on a prior jury that acquitted another criminal defendant), *cert. denied*, 129 S. Ct. 619 (2008); *United States v. Ruiz*, 894 F.2d 501, 506-07 (2d Cir. 1990) (finding sufficient the explanation that a stricken venireperson had served on multiple previous hung juries). "[T]he district court permissibly found that the government articulated, and possessed, a neutral reason for excusing the juror[s] in question . . . ." *Douglas*, 525 F.3d at 239. Accordingly,

19

we conclude that the court properly rejected White's *Batson* claim.

*IV.*    *Sentence*

White's final challenge on appeal is to his eighty-four-month prison sentence. We review criminal sentences for both procedural fairness and substantive reasonableness under an abuse-of-discretion standard. *United States v. Legros*, 529 F.3d 470, 473-74 (2d Cir. 2008). White claims both procedural and substantive error in his sentence. We find both claims to be without merit.

White first contends that the district court improperly applied an upward departure pursuant to section 4A1.3(a)(1) of the United States Sentencing Guidelines. *See United States v. Jones*, 531 F.3d 163, 170 (2d Cir. 2008) (noting that an improper application of the Guidelines is a procedural error that "can render a sentence unreasonable" (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007))). That section of the Guidelines permits a court to depart from the applicable criminal history category "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). "We review the district court's finding regarding the adequacy of the calculated criminal history for clear error and review the scope of the sentencing court's departure [under section 4A1.3(a)(1)] for reasonableness." *United States v. Cox*, 299 F.3d 143, 146 (2d Cir. 2002) (citing *United States v. Kassar*, 47 F.3d 562, 566 (2d Cir.1995), *abrogated on other grounds, Spencer v. Kemna*, 523 U.S. 1 (1998)).

White's Presentence Investigation Report ("PSR") determined that under the Guidelines,

20

White's offense level was twenty and his criminal history category V, resulting in a sentencing range of sixty-three to seventy-eight months' imprisonment. The district court adopted the findings in the PSR, to which White did not object, but concluded that criminal history category V underrepresented the seriousness of White's past criminal conduct and the likelihood that he would commit another crime. In reaching this conclusion, the district court noted that White had been convicted of twenty-one offenses, six of which were felonies, and many of which involved violence. As the district court put it, "virtually since the eighties, about every other year, every year[,] Mr. White gets convicted of something. This is his sixth felony . . . [and] 21st conviction." The district court noted that some of the convictions, including a conviction for burglary and one for attempted robbery, as well as several misdemeanors, were not counted in the criminal history calculation because of their age. Because of this "continuing long-term pattern," the sentencing judge concluded, "the criminal history does underrepresent how serious [White's] record is, and also . . . underrepresents the likelihood that he will commit some other crime." The court therefore departed upward to criminal history category VI, which resulted in a Guidelines range of seventy to eighty-seven months.

We are not persuaded that the district court clearly erred in finding that the PSR's Guidelines calculation, which discounted several of White's prior convictions, did not adequately represent the seriousness of White's criminal history. Guidelines § 4A1.3(a)(2) expressly provides that "[p]rior sentence(s) not used in computing the criminal history category" may be considered in determining whether to depart under § 4A1.3(a)(1). U.S.S.G. § 4A1.3(a)(2). Given White's many convictions and the regularity with which he committed crimes, moreover, we see no clear error in the district judge's conclusion that White is the type of person who is not easily deterred, and who therefore is likely to

21

commit future crimes.

In addition, we see nothing unreasonable about the scope of the district court's departure in this case. The court departed only one level to criminal history category VI, the highest criminal history level available in ordinary cases. *See id.* § 4A1.3(a)(4)(B). The district court's departure was therefore narrow. Furthermore, the court imposed a sentence that was a mere six months above the Guidelines range that would have been applicable without the departure, and to which White had no objection. We cannot say that this was an abuse of discretion.

Finally, White contends that his sentence is substantively unreasonable because it is greater than necessary to meet the sentencing goals expressed in 18 U.S.C. § 3553(a). *See Jones*, 531 F.3d at 170 (noting that "substantive reasonableness reduces to a single question: 'whether the District Judge abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed" (quoting *Gall*, 128 S. Ct. at 600)). As noted previously, the district court imposed a sentence only slightly above the Guidelines range. Furthermore, White possesses an extensive criminal history for which the Guidelines do not fully account. In light of these facts, we cannot say that the sentence was excessive or outside the range of sentences that the district court could reasonably impose.

## CONCLUSION

We have considered all of White's contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of the district court hereby is **AFFIRMED**.