United States v. Williams

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of June, two thousand thirteen.

PRESENT:
> **RALPH K. WINTER,**
> **PETER W. HALL,**
> **GERARD E. LYNCH,**
> *Circuit Judges.*

_____

United States of America,

> *Appellee*,

> v.                                                                           12-1418

Trevor Williams, AKA Timothy Davis,
AKA Tyrone R. Campbell, AKA Trevor
Williams,

> *Defendant-Appellant*.

_____

FOR APPELLANT:          Trevor Williams, *pro se*, Minersville, PA.

FOR APPELLEES:          Michael Alexander Levy, Justin Anderson, Rachel Peter Kovner
                        (Jessica Ortiz, *on the brief*) *for* Preet Bharara, United States
                        Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Trevor Williams was convicted after a trial by jury of possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1). He now appeals both his conviction and his sentence of 192 months' imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.      Suppression Hearing

Williams first challenges the district court's denial of his motion to suppress the firearm that was found in his possession. When hearing an appeal from the denial of a motion to suppress evidence, we review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the Government, and its legal conclusions *de novo. See United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004). The presence of reasonable suspicion to support a stop is a mixed question of law and fact that is reviewed *de novo*. *United States v. Singh*, 415 F.3d 288, 293 (2d Cir. 2005).

Although the Fourth Amendment prohibits unreasonable searches and seizures, police officers are permitted to stop individuals in limited circumstances for purposes of investigating possible criminal behavior when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) (stating that a showing of reasonable suspicion requires "some minimal level of objective justification") (internal quotation

2

marks omitted). While conducting an investigatory stop, officers are also permitted to frisk an individual if they "reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). To determine whether a *Terry* stop is valid, courts consider the totality of all the circumstances as they existed at the time of the stop. *See Sokolow*, 490 U.S. at 8; *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995).

Here, the totality of the circumstances support the district court's finding that reasonable suspicion existed at the time of the stop and frisk. Prior to approaching Williams, Stockton observed Williams swaying back and forth, in the middle of the street, at night, in a high-crime area. While "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable particularized suspicion that the person is committing a crime[,] . . . officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124. The location and time of day coupled with his observation of Williams's suspicious behavior, gave Stockton sufficient reason to believe an investigatory stop was warranted to determine, at the least, whether Williams needed assistance due to intoxication or for some other reason. After being approached by police, Williams's hostile response and Stockton's observation of a "bulge" on the right side of his thigh justified the subsequent frisk conducted to protect the officers' safety. *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977) (*per curiam*) (finding that a "bulge in the jacket permitted the officer to conclude that [the defendant] was armed and thus posed a serious and present danger to the safety of the officer"). To the extent Williams challenges Stockton's credibility, the district court found Stockton credible, and Williams has not demonstrated that the finding was clearly

3

erroneous. *See Rodriguez*, 356 F.3d at 257; *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990) ("Assessments of the credibility of witnesses are the province of the district court[,] and we are not entitled to overturn those assessments.").

Furthermore, the district court did not deny Williams the right to testify or present a defense at the suppression hearing. Contrary to Williams's argument, the district court was not required to inform him of "the right to testify and ascertain whether [he] wishe[d] to waive that right." *See Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997). Williams is also incorrect in his assertion that the district court advised him not to testify. The district court merely warned Williams that he did not have to say anything and that if he did so he might incriminate himself. *See United States v. Desimone*, 119 F.3d 217, 230 (2d Cir. 1997) (finding "sensible" the district court's decision to "offer a realistic assessment of the possible, or even probable, negative consequences" of testifying at a hearing).

## II. Entrapment by Estoppel and Manufactured Jurisdiction Defenses

Entrapment by estoppel "arises where a government agent authorizes a defendant 'to engage in otherwise criminal conduct . . . and the defendant, relying thereon, commits forbidden acts in the mistaken but reasonable, good faith belief that he has in fact been authorized to do so.'" *United States v. Gil*, 297 F.3d 93, 107 (2d Cir. 2002) (quoting *United States v. Abcasis*, 45 F.3d 39, 43 (2d Cir. 1995)). "The manufactured jurisdiction concept is properly understood not as an independent defense, but as a collection of three distinct theories: (1) outrageous government conduct in violation of due process; (2) entrapment; and (3) a failure by the prosecution to prove an essential element of the crime." *United States v. Al Kassar*, 660 F.3d

4

108, 119 (2d Cir. 2011) (internal quotation marks and alteration omitted). Both of Williams's claims on these grounds fail.

With respect to his entrapment by estoppel defense, Williams advanced the theory that his possession of the firearm was for the purpose of turning it in to a gun buy back program ("GBBP"). This theory was presented to the jury, and the jury subsequently rejected it. Moreover, the jury found, as it was entitled to, that it was not reasonable for Williams to believe that he could possess a gun for that purpose in light of the fact that he was a felon.

With respect to his manufactured jurisdiction defense, Williams has not shown outrageous government conduct violating due process, entrapment, or a failure of the prosecution to prove an essential element of the crime. To the extent that Williams claims that the Government used the gun buy back program to prosecute him selectively, he is mistaken. *See, e.g., United States v. Stewart*, 590 F.3d 93, 121 (2d Cir. 2009) (stating that a claim of selective prosecution requires the defendant to establish that he was "treated differently from other similarly situated individuals and that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [him].") (internal quotation marks omitted).

## III.    Prosecutorial Misconduct

As we have previously made clear, "[w]e review for abuse of discretion a district court's denial of a [Federal Rule of Criminal Procedure 33] motion alleging prosecutorial misconduct." *United States v. Banki*, 685 F.3d 99, 119–20 (2d Cir. 2012). In asserting a claim of prosecutorial misconduct, a defendant "face[s] a heavy burden, because the misconduct alleged must be so severe and significant as to result in the denial of [his] right to a fair trial." *United States v.*

5

*Locascio*, 6 F.3d 924, 945 (2d Cir. 1993). When such a claim arises based on the appropriateness of closing statements, we must bear in mind that "both the 'prosecutor and defense are entitled to broad latitude in the inferences they suggest to the jury during closing arguments,' provided they do not misstate the evidence, refer to facts not in evidence, or express counsel's personal beliefs as to guilt or innocence." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir. 1985) (quoting *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir. 1978)).

In this case, the Government did none of the above. The arguments raised in closing referred to, *inter alia*, Williams's legal status as the reason he could not possess a firearm and asked the jury to draw reasonable inferences from the proffered evidence. Moreover, contrary to Williams's contention, the stipulation he entered into with the Government merely stated that a gun buy back program existed; it did not preclude the Government from arguing that the existence of the gun buy back program was irrelevant to the question of whether Williams could legally possess a firearm. The district court did not abuse its discretion in denying Williams's Rule 33 motion.

## IV.    Jury Instructions

To establish on appeal that a requested jury instruction was improperly denied, a defendant must demonstrate that "the requested instruction accurately represented the law in every respect" and that, as a result of the charge actually given, "he was prejudiced." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011). "We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *Id.* (quoting *United States v. Bok*, 156 F.3d 157, 160 (2d Cir. 1998)).

6

Williams failed to preserve his argument that the entrapment by estoppel defense was incorrect as given. Even if Williams had preserved it, however, it is clear that he was not prejudiced because the district court's instruction conveyed the elements of entrapment by estoppel—reliance on an official's statement and that the reliance was reasonable. *See Gil*, 297 F.3d at 107. Likewise, Williams was also not prejudiced by the district court's refusal to instruct the jury on his innocent possession defense. While we have not decided "whether to recognize an innocent possession defense in the section 922(g)(1) context," *United States v. White*, 552 F.3d 240, 249 (2d Cir. 2009), we have repeatedly rejected efforts to assert such a defense where the possession was not "momentar[y]," *United States v. Paul*, 110 F.3d 869, 872 (2d Cir. 1997), or "only for as long as necessary" to deal with a justifying necessity of some kind, *White*, 552 F.3d at 249. Here, Williams stated his intent to take the gun home with him in the middle of the night and proceeded to walk down the street while carrying it. As Williams's possession was much longer than fleeting, and Williams has presented no significant justification for possessing the firearm, such as a protection of a child, the district court correctly declined to instruct the jury on the innocent possession defense.

## V.     Right to be Present and Handling of Jury Notes

A defendant has the right to be present "at any stage that is critical to the outcome of the trial and if his presence would contribute to the fairness of trial." *Monroe v. Kuhlman*, 433 F.3d 236, 246 (2d Cir. 2006). With respect to the handling of jury notes, *United States v. Ronder* provides that: (1) the jury's inquiry should be submitted in writing; (2) the note should be read into the record in the presence of counsel and defendant while the jury is not present; (3) counsel should be afforded the opportunity to suggest appropriate responses; and (4) after the jurors are

7

recalled, the request should again be read in their presence to make sure that it accurately reflects their question and allows them to elaborate upon it if needed. *See* 639 F.2d 931, 934 (2d Cir. 1981). As Williams did not contemporaneously object to either the alleged violation of his right to be present or the district court's handling of the jury note at issue, we review these contentions for plain error. *See United States v. Salim*, 690 F.3d 115, 124 (2d Cir. 2012) (reviewing district court's acceptance of waiver of presence for plain error); *United States v. Young*, 140 F.3d 453, 456–57 (2d Cir. 1998) (reviewing district court's decision to accept a verdict in spite of unanswered jury note for plain error).

Here, Williams has not demonstrated that his right to be present was violated because he has not shown that there were relevant proceedings for which he was not present while he was awaiting the jury's verdict. To the extent Williams contests the district court's decision to accept the verdict instead of responding to the jury note, Williams did not object at the time and cannot show plain error. *See Young*, 140 F.3d at 457 (finding no error in district court's acceptance of the verdict, in spite of outstanding jury note, where neither party objected).

**VI.     Federal Rule of Evidence 404(b)**

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence is, however, admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Furthermore, we "follow[] the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under

8

Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir.

2011). To determine whether evidence was properly admitted under Rule 404(b), courts

consider whether: "(1) the prior crimes evidence was offered for a proper purpose; (2) the

evidence was relevant to a disputed issue; (3) the probative value of the evidence was

substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the

court administered an appropriate limiting instruction." *Id.* at 56-57 (internal quotation marks

omitted). We review a district court's evidentiary rulings for abuse of discretion. *United States

v. White*, 692 F.3d 235, 244 (2d Cir. 2012).

Here, the district court did not abuse its discretion in admitting evidence of Williams's

1997 firearms conviction. The evidence was admitted for the proper purpose of showing intent

or knowledge and was relevant to rebut Williams's claim that he believed, in good faith, that the

GBBP authorized him to possess a firearm. Furthermore, because an element of the offense

involved being a convicted felon, there was very little risk of unfair prejudice to Williams in

introducing evidence of his 1997 conviction because the jury already knew of his status as a

felon. Finally, the court administered an appropriate limiting instruction, telling the jury that the

evidence could only be considered with respect to the issue of knowledge or intent.

## VII. Speedy Trial Act, Federal Rule of Criminal Procedure 5.1, and Challenges to the Indictment as Duplicitous and Multiplicitous

The Speedy Trial Act provides, as relevant here, that an "information or indictment

charging an individual with the commission of an offense shall be filed within thirty days from

the date on which such individual was arrested." 18 U.S.C. § 3161(b).

> The Speedy Trial Act allows a period of thirty days between arrest and
> indictment, see 18 U.S.C. § 3161(b), except for certain periods of delay
> permitted by statute, *see id.* § 3161(h). Among the excluded periods of

9

delay are those granted by the court *sua sponte* or at the request of a party, but only upon findings "that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

*United States v. Culbertson*, 598 F.3d 40, 47 (2d Cir. 2010). Here, Williams was arrested on December 5, 2008, and, on January 5, 2009, the district court found that the ends of justice were served by allowing the government additional time within which to obtain an indictment. It extended the deadline until February 5, 2009, and excluded that extra time from counting toward the thirty days. Because the grand jury's indictment, which issued on February 4, 2009, was filed within the excluded time period, Williams's Speedy Trial Act claim fails.

Even assuming, as Williams claims, that he did not waive his right to a preliminary hearing under Federal Rule of Criminal Procedure 5.1, his claim was mooted by the grand jury's indictment. Pursuant to Rule 5.1(c), a preliminary hearing must be held "within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody." A failure to timely hold such a preliminary hearing requires that a defendant be released "without prejudice . . . to the institution of further criminal proceedings against him upon the charge upon which he was arrested." *See* 18 U.S.C. § 3060(d). Even if Rule 5.1 was violated, further criminal proceedings based on the charge for which he was arrested were instituted against him. Moreover, Rule 5.1(a) states that a preliminary hearing is not required if "the defendant is indicted." As a result of being indicted, any claim that Williams might have had for release pending further criminal proceedings was rendered moot.

With respect to Williams's challenges to the indictment, an indictment is duplicitous when: (1) "it combines two or more distinct crimes into one count," in violation of Federal Rule of Criminal Procedure 8(a)'s "requirement that there be a separate count for each offense"; and

10

(2) "the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (internal quotation marks omitted). "An indictment is multiplicitious when a single offense is alleged in more than one count." *United States v. Jones*, 482 F.3d 60, 72 (2d Cir. 2006) (internal quotation marks omitted).

Even assuming, *arguendo*, that Williams is correct that the indictment was both duplicitous and multiplicitous, he is not entitled to any relief because he was convicted of only one count and, therefore, not prejudiced. *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (Finding that "[i]f the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment."); *Sturdivant*, 244 F.3d at 80 (explaining that, when a defendant is convicted of duplicitous counts, "a court can avoid prejudice to the defendant by sentencing him based upon a conviction for only one offense as long as that one offense does not carry a higher penalty than the other") (internal citation omitted).

## VIII. Armed Career Criminal Act

Pursuant to 18 U.S.C. § 924(e), "a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both" is subject to a fifteen-year mandatory minimum sentence. A violent felony is defined as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). In determining whether a prior conviction is a violent felony, courts use a "categorical approach" by "look[ing] only to the fact of conviction and the statutory

11

definition of the prior offense." *Shepard v. United States*, 544 U.S. 13, 17 (2005). If, however, the statute criminalizes a broader range of conduct than falls within the violent felony definition, courts are permitted to look at certain additional documents—such as the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"—to determine whether the offense was a violent felony. *Id.* at 16.

Here, Williams has three or more prior convictions that qualify as violent felonies: (1) a 1993 conviction for third-degree robbery, in violation of New York Penal Law ("NYPL") § 160.05; (2) a 1994 second-degree attempted robbery conviction, in violation of NYPL § 160.10; and (3) a 1997 second-degree assault conviction, in violation of NYPL § 120.05(2). We have previously determined that convictions pursuant to NYPL §§ 160.05 (robbery in the third degree) and 120.05(2) (assault) qualify, categorically, as violent felonies under the Armed Career Criminal Act. *See United States v. Walker*, 442 F.3d 787, 789 (2d Cir. 2006) (§ 120.05(2)); *see also United States v. Brown*, 52 F.3d 415, 426 (2d Cir. 1995) (§ 160.05). Furthermore, as NYPL § 160.10 adopts the same definition of robbery as § 160.05, except that the degree is second instead of third, it too qualifies as a violent felony. *See Brown*, 52 F.3d at 426. Accordingly, Williams was properly adjudicated to be an armed career criminal.

## IX. Cumulative Error

As none of the above arguments by Williams demonstrates an error in the proceedings below, his argument that cumulative error warrants reversal or a new trial must also fail. *See United States v. Hurtado*, 47 F.3d 577, 586 (2d Cir. 1995) (finding no "accumulation of factors warranting a new trial" where the district court had not committed any harmful errors).

12

## X.     Ineffective Assistance of Counsel

To the extent Williams seeks to preserve his ineffective assistance of counsel claim, we have expressed a preference to hear claims of ineffective assistance of counsel on collateral review.  *See United States v. Doe*, 365 F.3d 150, 152 (2d Cir. 2004); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003).  We express no view as to the merits of this claim, and Williams may, if he wishes, present his claim of ineffective assistance of counsel in a properly filed 28 U.S.C. § 2255 motion.

We have considered Williams's remaining arguments on appeal and find them to be without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13