*United States v. Carol-Lisa Gutman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of October, two thousand seventeen.

Present:
>DEBRA ANN LIVINGSTON,
>GERARD E. LYNCH,
>>*Circuit Judges*,
>JED S. RAKOFF,
>>*District Judge*.\*

---

UNITED STATES OF AMERICA

>*Appellee*,

>v.                                                                          16-4189

CAROL-LISA GUTMAN,

>*Defendant-Appellant*.

---

For Defendant-Appellant:          PAUL J. CONNOLLY, Law Office of Paul J. Connolly, Delmar, New York.

For Plaintiff-Appellee:          MICHAEL F. PERRY, Assistant United States Attorney, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York.

---

\* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Carol-Lisa Gutman ("Gutman") appeals from a final judgment of conviction of the United States District Court for the Northern District of New York, entered on December 9, 2016. A jury found Gutman guilty of five counts of wire fraud (in violation of 18 U.S.C. § 1343), two counts of federal employees' compensation fraud (in violation of 18 U.S.C. § 1920), and one count of theft of government money (in violation of 18 U.S.C. § 641). On appeal, Gutman challenges the sufficiency of the evidence to sustain her conviction, and also argues that the district court judge committed reversible error in responding to a jury note.

The government's theory of the case was that Gutman, a former postal employee who was injured on the job in 1987 and successfully applied to the United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") for disability benefits, made numerous false statements to her treating physicians between 2001 and 2016, knowing that these statements would be the basis for the doctors' annual reports to OWCP certifying her continued physical disability, that her continued entitlement to these benefits turned on her condition, and that she was legally obligated to be completely truthful with OWCP about her rate of recovery and her physical capabilities. During the relevant period, Gutman received roughly $429,677 in federal disability compensation. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Sufficiency of the Evidence

We review a sufficiency of the evidence challenge *de novo*. *United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017). "A defendant who challenges the sufficiency of the evidence to support [her] conviction bears a heavy burden." *United States v. Broxmeyer*, 616 F.3d 120, 125 (2d Cir. 2010) (quoting *United States v. Jackson,* 335 F.3d 170, 180 (2d Cir. 2003)). We "must uphold the conviction if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Silver*, 864 F.3d at 113 (quoting *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016)). And we must "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (quoting *United States v. Babilonia*, 854 F.3d 163, 174 (2d Cir. 2017) (internal quotation marks omitted)). In short, we may only reverse the jury's decision if the evidence of the defendant's culpability is truly "nonexistent or meager." *Broxmeyer*, 616 F.3d at 125 (quoting *Jackson*, 335 F.3d at 180).

On appeal, Gutman makes two principal arguments in attacking the sufficiency of the evidence. First, she argues that the evidence could not sustain a violation of wire fraud, since the evidence does not show that she had intent to defraud. Viewing the evidence in the light most favorable to the government, however, we conclude that the jury had ample basis to conclude that the element of intent to defraud had been established.

During the relevant period, Gutman was examined annually by two physicians: Dr. Neil Lava until 2006, and Dr. George Forrest thereafter. Each doctor submitted annual reports to OWCP. Dr. Lava reported annually that Gutman could not push, pull, lift, squat, kneel, or climb; he testified that he based his assessment in large part on what Gutman herself told him. Dr.

3

Forrest reported the same deficits, similarly basing his assessments on Gutman's own reports of her condition. In 2009, he told OWCP that Gutman "has been forced into a very unusual lifestyle by her pain," and in 2011 that she "cannot do any type of manual work." Gov't App'x at 79, 82. And in both 2012 and 2013, Dr. Forrest reported that Gutman "does not participate in normal household activities such as meal preparation, household cleaning, or household maintenance." App'x at 198–99, Gov't App'x at 84–85.

Based on the evidence at trial, a reasonable jury could easily conclude beyond a reasonable doubt that many of these statements were false. Video footage from September 2001 to April 2016 showed Gutman doing extensive work on her yard—including carrying large containers of yard waste, lifting plants, gathering debris, and raking leaves. Gutman engaged in all of these activities with little to no apparent pain or difficulty. Dr. Lava testified that had he known the true extent of Gutman's physical capabilities, he would have changed his report to OWCP. In fact, "any amount of yard work," he testified at trial, would have been inconsistent with the activity restrictions he had listed on Gutman's OWCP forms. App'x at 384. In addition to the evidence of yard work, many of Gutman's neighbors testified that they had seen Gutman engage in other similar physical activities since her injury.

A reasonable jury could also conclude that Gutman understood full well that she was obliged to be truthful with respect to her physical abilities. During the relevant period, she signed and submitted at least eight forms in which she certified that:

> "I know that anyone who fraudulently conceals or fails to report . . . information which would have an effect on benefits, or who makes a false statement or misrepresentation of a material fact in claiming a payment or benefit . . . may be subject to criminal prosecution, from which a fine or imprisonment, or both, may result. *I understand that I must immediately report to OWCP any improvement in my medical condition . . . .*"

4

Gov't App'x at 6, 12, 19, 24, 29, 34, 44, 48, and 50 (emphasis added). Moreover, the jury also heard evidence from which it could find that Gutman deliberately exaggerated the extent of her limitations on multiple occasions when she met with Dr. Lava. As Dr. Lava testified after he viewed a video of Gutman doing yard work:

> Q. The way she was turning and moving [in the video], did it look different than she looked in your office? A. Yes. Q. And please just explain how? A. So she was always very uncomfortable [in my office]. She would never sit down during our discussions and exams, she would always stand because her back bothered her. She was always looking uncomfortable basically, and when she turned, she turned on block, as if she was very stiff, and so that sort of posture is counter to what I would think of to be able to push a pushmower. Q. And did you see that same turning on block . . . on the video here? A. No. It looked very normal.

App'x at 383. This evidence was more than sufficient to allow the jury to find that Gutman intended to defraud OWCP, since fraudulent intent for purposes of 18 U.S.C. § 1343 "may be proven through circumstantial evidence, including by showing that [a] defendant made misrepresentations to the victim(s) with knowledge that the statements were false." *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015) (quoting *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)).

Gutman also argues that the government failed to carry its burden in demonstrating federal employees' compensation fraud. As the district court judge explained to the jury, federal employees' compensation fraud consists of three elements: (1) "the defendant knowingly and willfully made or caused to be made a false statement" to OWCP; (2) the false statement was "material" to the defendant's "continued receipt of federal Workers' Compensation benefits"; and (3) the defendant "received benefits in excess of $1,000 as a result." App'x at 711. Gutman insists that the evidence failed to establish any of the three elements. We disagree.

First, as to count 6 of the indictment, Gutman claims that the evidence was insufficient to support a finding that Gutman "caused" Dr. Forrest to make false statements to OWCP. She notes that, at trial, Dr. Forrest insisted that he would not have changed his evaluation of Gutman even if he had known about her physical activities. But the jury was not required to believe this testimony, particularly given that Dr. Forrest had provided contrary testimony to the grand jury, and was unable to account for the contradiction when confronted with the discrepancy on cross-examination. Moreover, Dr. Forrest's statement to OWCP that Gutman did not participate in "normal household activities, such as . . . household maintenance," App'x at 433, was clearly refuted by the evidence presented at trial. A rational finder of fact could easily conclude that, by knowingly allowing Dr. Forrest to make such a statement to OWCP, Gutman "caused" a false statement to be made to the federal government.

Gutman also disputes that her alleged fabrications were "material." We reject this contention. "[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (internal quotation marks omitted). Gutman's statements—transmitted through Dr. Forrest—were certainly capable of influencing OWCP's decision about whether to continue her benefits, since, according to testimony presented at trial, OWCP makes benefits decisions based on the extent of the worker's residual injury.

Finally, Gutman contends that she did not ultimately receive benefits in excess of $1,000 as a result of her allegedly false statements. But the evidence clearly forecloses that argument: Gutman received numerous monthly payments of over $2,400 after making her statements. The jury could reasonably conclude that she would not have received some or all of these payments had

6

she been candid with Dr. Forrest, Dr. Mohler, and OWCP about her physical capabilities. In sum, Gutman's sufficiency of the evidence challenge fails.

## II. Faulty Jury Instruction

We next address Gutman's jury instruction claim. Relevant to this claim, a number of the defense's exhibits at trial suggested that Gutman suffered from "atypical affective disorder," and one doctor briefly noted in her testimony that there may have been a connection between this disorder and an individual's perception of pain. The disorder, however, was not the subject of other trial testimony, and in fact was never defined either in testimony or documents received in evidence. During their deliberations, the jury sent a note to the district court judge that asked him to define "atypical affective disorder." The judge provided the following response:

> [The definition of "atypical affective disorder" is] really not somethin' I can give to you. You have to rely upon whatever the evidence has been that's been produced and that you accept. But, importantly, if you look at the elements of each of the charges, I don't know if it's really necessary that you have a definition of that anyway to decide the elements of each of these charges. In any event, you must read all of the instructions in their entirety when you make a decision on them.

App'x 729–30. Gutman argues that the third sentence of this instruction constituted reversible error.

We review a claim of error in a jury instruction *de novo*. *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir. 2011). "To secure reversal based on a flawed jury instruction, a defendant must demonstrate both error and ensuing prejudice." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (quoting *United States v. Quinones*, 511 F.3d 289, 313 (2d Cir. 2007)). Even assuming *arguendo* that the judge erred, we find that the error was not prejudicial. Gutman did not argue at trial that she was unaware of her physical capabilities, nor that her seemingly false or deceptive conduct regarding these abilities arose from her disorder. And based on the evidence at trial,

7

from September 2001 to April 2016, Gutman engaged in extensive yard work and daily chores—with little to no visible strain—and concealed this fact from OWCP. She did not correct Dr. Forrest's statement to OWCP that she could not "do any type of manual work" or "physical activity." Gov't App'x at 79, 82. And as described above, she may have even deliberately exaggerated the extent of her injuries when she met with Dr. Lava. Gutman offers no explanation as to how the record's tangential references to "atypical affective disorder" undercut this evidence of fraudulent intent. Nor does she proffer more than unsupported speculation as to how the absence of a definition regarding the nature of this disorder might have raised a reasonable doubt. Gutman acknowledges that "there was no actual definition of [atypical affective disorder] in the record," Br. for Def.-Appellant at 55, and the jury was specifically advised in the written instructions that its verdict "must be based exclusively upon the evidence *or the lack of evidence in the case*." Gov't App'x at 183 (emphasis added). In short, Gutman has wholly failed to demonstrate prejudice.

\* \* \*

We have considered Gutman's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8