**UNITED STATES of America, Appellee,**

v.

**Evelyn GONZALEZ, Defendant–Appellant,**

---

Rafael Guzman–Castillo and
Arquimedes Morban,
Defendants.

Docket No. 04–1956–CR.

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 2004.

Decided May 3, 2005.

**120**

Martin R. Stolar, New York City, for Appellant.

Jonathan S. Abernethy, Assistant United States Attorney, Southern District of New York, New York City (David N. Kelley, United States Attorney, Sharon L. McCarthy, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: MESKILL, CALABRESI and WESLEY, Circuit Judges.

MESKILL, Circuit Judge.

Defendant–Appellant Evelyn Gonzalez was convicted following a jury trial in the United States District Court for the Southern District of New York, Duffy, *J.*, of participating in a conspiracy to possess and distribute cocaine in violation of 21 U.S.C. §§ 841 and 846. On appeal, Gonzalez seeks a new trial, arguing that the district court improperly precluded jury instructions on the defense of coercion or duress and the single transaction rule. She also claims that under the rule of lenity the district court erred in imposing a sentence premised on a drug quantity exceeding that found by the jury. For the reasons that follow, we affirm the district court's jury instructions and United States Sentencing Guidelines calculations. However, in light of *United States v. Booker,*— U.S.—, — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) and *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), we remand for the limited purpose of affording the district court an opportunity to consider whether to resentence.

## BACKGROUND

Gonzalez was convicted of participating in a conspiracy to distribute cocaine from New York City to Delaware. The evidence presented at trial, particularly as it bears on Gonzalez's appellate claims that the district court improperly instructed the jury, consisted of the following.

Detective John Barry of the New York City Police Department (NYPD) testified that, through court-authorized wiretaps and surveillance, the NYPD monitored the activities of José Padua, Gonzalez and her "common law husband," Arquimedes Morban. On July 6, 2001, the NYPD arrested

Morban as he transported two kilograms of cocaine in his car.

Gonzalez, who was the sole defense witness, claimed that before her husband's arrest she only engaged in drug activities when she "act[ed] as a translator" for Morban during a single telephone call.[1] However, Gonzalez testified that her involvement escalated after Morban's arrest because Padua threatened to kill her and her family if her husband's drug debts were not repaid. These threats were the basis of Gonzalez's putative duress and coercion defenses.

On cross-examination, Gonzalez admitted that she never sought police protection from Padua, ostensibly because "she believed that [the police] would not listen to her" and because she did not want to "giv[e] evidence against her husband." She also admitted to certain instances that undermined her duress claim. For example, she voluntarily gave Padua her sister's telephone number so that she (Gonzalez) could be easily reached. And on one occasion Gonzalez asked Padua to drive her to lower Manhattan so that she could attend one of her husband's court proceedings.

The government also offered the testimony of Detective Barry and Rafael Guzman–Castillo, one of Gonzalez's alleged coconspirators. During Barry's testimony the government offered recordings of ten telephone conversations between Gonzalez and Padua post-dating Morban's arrest, some of which Gonzalez initiated. Throughout these conversations, Gonzalez and Padua plotted how they might recover various drug debts: for example, during one call, Gonzalez proposed that she and Padua "stakeout" debtors, and in another she recounted how she told a debtor to

quit concocting excuses for his delinquency. Guzman–Castillo testified that, based on his personal observations, he believed Gonzalez was a willing participant in the conspiracy even before Morban's arrest.

The jury convicted Gonzalez. In doing so, however, the jury answered two verdict questions finding that, contrary to the government's allegation, Gonzalez's offense did not involve five kilograms or more, or 500 grams or more, of a mixture containing cocaine.

Thereafter, the district court conducted a sentencing hearing. The government asserted that despite the jury's finding, the district court could independently find by a preponderance of the evidence that Gonzalez's offense involved at least five kilograms of cocaine, thereby placing her at a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). Gonzalez countered that the lack of an explicit jury finding on drug weight created an ambiguity on the issue that, under the rule of lenity, should be resolved in her favor. Gonzalez therefore reasoned that the base offense level should be fixed at 12, the lowest level possible. *See id.* § 2D1.1(c)(14).

The district court rejected both parties' recommendations. The district court stated that the two kilograms of cocaine that Gonzalez's husband possessed when he was arrested were foreseeable to Gonzalez and could theoretically form the basis of its sentencing calculation. But, refusing to vitiate the jury's drug weight finding, the district court determined that Gonzalez's base offense level should be 24—corresponding to a drug weight of at least 400 grams but less than 500 grams of cocaine. *See id.* § 2D1.1(c)(8). Absent additional

---

1. We note that Gonzalez had some knowledge of Morban's drug activities before partaking in this telephone conversation. Gonzalez herself testified that, before the call, she took a trip to Delaware with Morban during which she was aware that he was collecting narcotics proceeds and distributing drugs.

enhancements and based on a Criminal History Category of I, the district court sentenced Gonzalez to 63 months imprisonment. She timely appealed.

## DISCUSSION

### I. *Jury Instructions*

■ We first consider whether Gonzalez was entitled to jury instructions on a coercion or duress theory and on the single transaction rule. The propriety of the district court's refusal to provide requested jury instructions is a question of law that we review *de novo*. *See United States v. McCarthy*, 271 F.3d 387, 396 (2d Cir.2001). We will vacate a conviction only if the instruction that was sought "accurately represented the law in every respect" and only if "viewing as a whole the charge actually given, [the defendant] was prejudiced." *United States v. Dove*, 916 F.2d 41, 45 (2d Cir.1990) (internal quotation marks omitted); *see also United States v. Pimentel*, 346 F.3d 285, 301–02 (2d Cir. 2003).

### A. *Coercion or Duress*

Gonzalez contends that the district court erred by denying her request for a jury instruction on the affirmative defense of coercion or duress. We disagree.

■ A defendant is entitled to an instruction on an affirmative defense only if the defense has "a foundation in the evidence." *United States v. Podlog*, 35 F.3d 699, 704 (2d Cir.1994) (internal quotation marks omitted). Three discrete elements must be met to establish coercion or duress. These are: (1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity. *See id.; see also United States v. Stevens*, 985 F.2d 1175, 1181 (2d Cir.1993). A defendant must make some showing on each element, including the element that the defendant lacked a reasonable means to escape the threatening conduct "by seeking the intervention of the appropriate authorities." *United States v. Bakhtiari*, 913 F.2d 1053, 1058 (2d Cir.1990) (internal quotation marks omitted); *see also United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (holding that there is no duress when there exists "a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm") (internal quotation marks omitted).

■ Gonzalez wholly failed to establish the third element and show why she lacked a reasonable means to escape Padua's threats. Gonzalez asserted that she did not seek police intervention because she believed the authorities "would not listen to her" about Padua's threats and because she was reluctant to "giv[e] evidence against her husband." Gonzalez's subjective belief that going to the police would have been futile is insufficient to demonstrate that she had no reasonable alternative but to violate the law. *See United States v. Jankowski*, 194 F.3d 878, 883 (8th Cir.1999). Likewise, Gonzalez's subjective belief that, had she sought police assistance, she would have been required to testify against her husband does not establish that she had no reasonable alternative but to assist Padua. *See id.; United States v. Posada–Rios*, 158 F.3d 832, 874 (5th Cir.1998). Accordingly, there was insufficient evidence to sustain the defense of coercion or duress. The district court therefore properly denied Gonzalez's request for a corresponding jury instruction.

## B. *Single Transaction Rule*

Gonzalez also challenges her conviction on the ground that the district court was obligated to charge the jury on the single transaction rule. That rule provides that "proof of participation in a single isolated narcotics transaction may be insufficient to warrant a conviction for conspiracy." *United States v. Agueci*, 310 F.2d 817, 835–36 (2d Cir.1962).

■ As noted above, the district court did not err by refusing to instruct the jury on coercion or duress. Accordingly, the court was correct to deny the requested jury charge on the single transaction rule. For absent a possible defense of coercion or duress—a defense to which Gonzalez was not entitled—the defendant's own testimony clearly established that she was criminally liable not for one transaction, but for a great many transactions. Gonzalez's inability to demonstrate her entitlement to a coercion or duress instruction therefore precludes her from successfully asserting that the district court was obligated to instruct the jury on the single transaction rule.

We therefore affirm the district court's decision not to instruct the jury on the coercion or duress defense and the single transaction rule.

## II. *Sentence*

Relying on *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Gonzalez challenges the district court's Guidelines calculation on Sixth Amendment grounds.[2] Specifically, she argues that her sentence is invalid as there was neither a jury finding beyond a reasonable doubt nor an admission by her as to the drug quantity involved in the offense.

■ Following oral argument, the Supreme Court decided *United States v. Booker*, a sequel to *Blakely*. *See Booker*, 125 S.Ct. at 756–57. As we have already exhaustively discussed the two-part *Booker* decision, *see generally Crosby*, 397 F.3d at 108–18, we merely note that in *Booker* the Supreme Court first held that the Guidelines' mandatory sentence enhancements premised on judge-found facts violated the Sixth Amendment right to a jury trial. *See Booker*, 125 S.Ct. at 756. Second, the Court remedied the Sixth Amendment violation by severing the statutory provisions that made the Guidelines mandatory. *Id.* at 764. As a result, the Guidelines were rendered "effectively advisory." *Id.* at 757. Hence, unless and until some other substitute scheme is implemented, district courts must consult and consider the Guidelines when imposing sentence, and appellate courts will review sentences for "reasonableness" in light of the Guidelines and other statutory sentencing objectives. *See id.* at 766–67. As we explained in *Crosby*, "the Guidelines have [not] been discarded. On the contrary, sentencing judges remain under a duty with respect to the Guidelines—not the previously imposed duty to apply the Guidelines, but the continuing duty to 'consider' them, along with the other factors listed in [18 U.S.C. §] 3553(a)." 397 F.3d at 111. But, because *Booker* wrought a change in how a district court must dis-

---

**2.** In *Blakely*, the Supreme Court invalidated under the Sixth Amendment a state's legislatively enacted guidelines scheme permitting a judge to sentence above a standard range if the judge found certain aggravating factors present by a preponderance of the evidence. 124 S.Ct. at 2536–39. The *Blakely* Court, citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), held that aggravating factors could enhance a sentence beyond the standard range only if the facts supporting the enhancement were submitted to a jury and proved beyond a reasonable doubt. *Id.* at 2536–37.

charge its sentencing obligations—transforming the nature of the Guidelines from mandatory to advisory—*Blakely* challenges such as Gonzalez's that were pending on direct review when *Booker* was decided "generally" require remand. *Id.* at 117; *see also United States v. Williams,* 399 F.3d 450, 460 (2d Cir.2005). In light of *Crosby,* we believe remand is necessary here, "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." *Crosby,* 397 F.3d at 117.

■ When undertaking this determination, the district court will be guided by its previous Guidelines calculation. *See id.* at 112 (holding that under advisory Guidelines system "[t]he applicable Guidelines range is normally to be determined in the same manner as before *Booker*"). The district court previously determined that Gonzalez's Guidelines range is 51 to 63 months (based on an Offense Level of 24 and a Criminal History Category of I). Gonzalez challenges this calculation on the ground that, because there was no explicit jury finding on drug quantity, under the rule of lenity her offense level should be fixed at 12, the lowest level possible. Because Gonzalez may raise the same argument before the district court, we consider it now, *see, e.g., United States v. D'Oliveira,* 402 F.3d 130, 131 (2d Cir.2005), and hold that the district court correctly concluded that its drug weight determination did not implicate the rule of lenity.

"[T]he touchstone of the rule of lenity is statutory ambiguity." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (internal quotation marks omitted). Therefore, the rule of lenity has "always [been] reserved ... for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (internal quotation marks omitted); *see also United States v. Simpson,* 319 F.3d 81, 86–87 (2d Cir.2002) (applying rule of lenity to resolve an ambiguity in a specific Guidelines section and application note and stating that to trigger the rule there must be a "provision of law at issue [that is] ambiguous"). Gonzalez, however, attempts to impose the rule of lenity to resolve an alleged factual ambiguity in her favor. To date, such an attempt to extend the rule of lenity has been addressed (and rejected) by only one other circuit. *See United States v. McEntire,* 153 F.3d 424, 438 n. 16 (7th Cir.1998) (holding in challenge to drug quantity finding that "[t]he rule of lenity does not apply to the district court's application of the Sentencing Guidelines to the facts"). We join the Seventh Circuit in holding that the rule of lenity is not applicable to a district court's fact-finding role at sentencing.

Contrary to Gonzalez's argument, the rule of lenity is not a catch-all maxim that resolves all disputes in the defendant's favor—a sort of juristical "tie goes to the runner." Rather, the rule is cabined to resolve ambiguous questions of law. *See Staples v. United States,* 511 U.S. 600, 619 n. 17, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (describing rule of lenity as requiring that "ambiguous criminal statute[s] ... be construed in favor of the accused"); *United States v. Granderson,* 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) ("In these circumstances—where [a statute's] text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor."); *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 28

L.Ed.2d 493 (1971) (emphasizing that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity"); *Simpson,* 319 F.3d at 87 (holding that for the rule of lenity to apply "the provision of law at issue must be ambiguous"). So confining the rule comports with its historical underpinning: that individuals should not languish in prison unless the legislature has clearly articulated precisely what conduct constitutes a crime. *See United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *see also United States v. Pabon–Cruz,* 391 F.3d 86, 102 n. 19 (2d Cir.2004). Moreover, we refuse to adopt Gonzalez's argument that the rule of lenity requires that factual ambiguities affecting sentencing must always be resolved in a defendant's favor. Such a mandate would straightjacket a district court in exercising its authority—that endures post-*Booker*—to resolve disputed facts by a preponderance of the evidence when arriving at a Guidelines sentence. *See Crosby,* 397 F.3d at 112 (holding that "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence"); *see also McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir.2005) (explaining that following *Booker,* "decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application"); *United States v. Hughes,* 401 F.3d 540, 546 (4th Cir.2005) ("Consistent with the remedial scheme set forth in *Booker,* a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.").

The district court correctly concluded that the rule of lenity does not apply to the facts of Gonzalez's case and the resultant Guidelines calculation. We therefore affirm the district court's initial Guidelines determination. In light of *Booker* and *Crosby,* however, we must remand for the limited purpose of affording the district court the opportunity to consider whether to resentence.[3]

### CONCLUSION

For the reasons just given, the judgment of conviction is affirmed. Nevertheless, we remand for sentencing proceedings consistent with this decision and in conformity with *Booker* and *Crosby.*

---

**3.** If Gonzalez does not desire a *Crosby* remand, she should so advise the Clerk of this Court by 5 p.m. on May 17, 2005. In the event that Gonzalez seeks remand, any appeal taken from the district court following this remand and resentencing, if it occurs, can be initiated only by filing a new notice of appeal. *See* Fed. R.App. P. 3, 4(b).