16-4261-cr
*United States v. Crawford*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of November, two thousand seventeen.

PRESENT:    AMALYA L. KEARSE,
            JOSÉ A. CABRANES,
            RICHARD C. WESLEY,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA

                *Appellee,*                            16-4261-cr

        *v.*

GLENDON SCOTT CRAWFORD

        *Defendant-Appellant*

---

| | |
|---|---|
| **FOR APPELLEE:** | RAJIT DOSANJH, Stephen C. Green, Richard D. Belliss (*on the brief*), Assistant United States Attorneys, *for* Grant C. Jaquith, Acting United States Attorney, Northern District of New York; |
| **FOR DEFENDANT-APPELLANT:** | DANIELLE NERONI REILLY, Albany, New York |

Appeal from a December 19, 2016 judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Glendon Scott Crawford ("Crawford") appeals his conviction and sentence following his jury trial. Crawford was convicted on charges related to his scheme to use an industrial x-ray device capable of releasing dangerous amounts of radiation to kill Muslims and others, including President Barack Obama. On appeal, Crawford argues that (1) he was the victim of entrapment and outrageous government conduct; (2) the statutes under which he was charged do not apply to his conduct and are unconstitutionally vague; (3) the District Court improperly admitted prejudicial testimony; (4) the District Court erred in refusing to charge the jury with the defense of renunciation; (5) the District Court erred in refusing to grant a motion to dismiss Counts One and Two as impermissibly duplicitous; and (6) his sentencing range under the Federal Guidelines resulted from an erroneous application of the terrorism enhancement under U.S.S.G. § 3A1.4. Crawford asks us to reverse the District Court's rulings on law and reverse the convictions.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## DISCUSSION

### I. Crawford's Claims of Entrapment and Outrageous Government Conduct

Crawford argues that the government entrapped him and subjected him to outrageous conduct. Although Crawford concedes that he had "strong political beliefs," he insists that he "would never have placed anything into motion without the Government's involvement." Appellant's Brief, 8.

Since the jury below rejected Crawford's entrapment defense, he must demonstrate on appeal that he was "entrapped as a matter of law." *United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011). He must show that "no reasonable jury could find predisposition beyond a reasonable doubt." *United States v. Cromitie*, 727 F.3d 194, 206 n. 8 (2d Cir. 2013). To do so, he must prove that: "(1) the government originated the criminal design, (2) the government suggested the design to the defendant and induced him to adopt it, and (3) the defendant had no predisposition to engage in the criminal design prior to the government's inducement." *Id.* (internal citations omitted).

Crawford asserts that he "was not predisposed to commit any crimes" and that the charged crimes were "initiated and induced by government agents." Appellant's Brief, 7. Yet he fails to demonstrate that no reasonable jury could find predisposition beyond a reasonable doubt. Crawford admits that he "came up" with the idea of using an industrial grade x-ray machine to target Muslims and others and he admits that he sought the support of Jewish organizations—conceding, in effect, predisposition. The evidence at trial revealed that Crawford told undercover government agents that he had "very carefully constructed this trap and taken decades to do it" and that he had been "hunting for years" for the necessary components. Reply Brief, 36. Crawford contends that he did not have resources to build the weapon without the assistance and encouragement of the government, and that although he had the idea, the government started him down the path to building the device and urged him to stay the course when he had doubts. But Crawford's desire to construct a deadly x-ray weapon was not mere fantasy that the government conjured into reality.

2

Crawford presented the undercover agents with detailed plans to secure parts for the device and hide his efforts by establishing a front company, and presented a list of scouted targets. The fact that the government provided parts and financing does not alone constitute entrapment. *Cromitie*, 727 F.3d at 215.

Crawford also challenges the District Court's ruling that outrageous government conduct was not a basis to dismiss his indictment. "[T]o obtain dismissal of an indictment based upon a claim of outrageous governmental conduct, a defendant must establish that the government engaged in outrageous behavior in connection with the alleged criminal events and that due process considerations bar the government from prosecuting her." *United States v. Cuervelo*, 949 F.2d 559, 565 (2d Cir. 1991). The defendant's burden here is "very heavy." *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999). "[O]nly Government conduct that shocks the conscience can violate due process," and courts give "deference to the Government's choice of investigatory methods." *Id.* (internal citations and quotation marks omitted). "Generally, to be 'outrageous,' the government's involvement in a crime must involve either coercion or a violation of the defendant's person." *Al Kassar*, 660 F.3d at 121.

This Court reviews the District Court's decision to deny Crawford's motion to dismiss Counts One and Two for outrageous government conduct *de novo. Id.* at 120-21. We conclude that there is no evidence of outrageous government conduct. Crawford faced no coercion or violation of his person. The government's efforts to persuade him to remain involved in the course of action that he initiated did not constitute outrageous conduct.

## II. Crawford's Claims that the Statutes Do Not Apply to His Conduct

Crawford argues that the statutes for each count of his conviction do not apply to his conduct. Specifically, he contends that his conduct did not involve a device that was designed or intended to "release" radiation under 18 U.S.C. § 2332h(a), under which he was convicted for Count One. Similarly, he contends that his conduct did not involve a device that was designed or intended as a "weapon of mass destruction" as required by 18 U.S.C. § 2332a(a)(2)(C) and 18 U.S.C. § 842(p)(2)(A), under which he was convicted for Counts Two and Three, respectively.

A. Count One

Crawford was convicted under Count One for violating 18 U.S.C. § 2332h, which makes it "unlawful for any person to knowingly produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess… or use, or possess and threaten to use… any device or other object that is capable of and designed or intended to endanger human life through the *release* of radiation or radioactivity" *Id.* § 2332h(a)(1)(B) (emphasis added). Crawford argues that this statute pertains only to devices containing conventional explosives that release radioactive contaminants—in other words, dirty bombs. He points to the legislative history, in which Congress noted that the law was intended to address the concern that "[a]tomic weapons or weapons designed to release radiation ('dirty bombs') could be used by terrorists to inflict enormous loss of life…" 108 H.R. 5118(2)(a)(2). He contends that this definition contrasts with a separate statute, passed in 2015, prohibiting the use of radioactive material or devices, in which "device" is defined as "any radioactive material *dispersal* or radiation-*emitting* device…." 18 U.S.C. § 2332i(e)(2)(B) (emphasis added).

Crawford submits that there is a legally significant difference between a dirty bomb that "releases" radiation and a device that "disperses" or "emits" radiation—one which Congress recognized by subsequently passing § 2332i, related to emission. He contends that since § 2332h does not apply and that Congress passed § 2332i after his conviction, he did not engage in criminal behavior and his conviction violated his fundamental right of due process.

Crawford did not timely attempt to raise this claim below. He only introduced it while seeking leave to file a second Rule 33 motion. Although Rule 12(b)(2) allows challenges to a court's jurisdiction at "any time" while the case is pending, we have explained that a defendant's claim regarding whether his or her conduct violated the charged statute "concerns the merits of the case" as opposed to jurisdiction. *United States v. Rubin*, 743 F.3d 31, 39 (2d Cir. 2014); *see* Fed. R. Crim. P. 12(b)(2). Accordingly, we review Crawford's claim for plain error. *See United States v. Vonn*, 535 U.S. 55, 62 (2002). To establish plain error, the defendant must show: "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010), quoting *Tuckett v. U.S.*, 556 U.S. 129 (2009).

Under plain error review, we conclude that Crawford's claim is unavailing—and, as the District Court described it, "frivolous." Appendix, 25. Any distinction between "releasing" radioactive material and "emitting" is a distinction without a difference. Crawford rests his argument on the legislative history, in which Congress appeared to specify that § 2332h addressed dirty bomb radiation in particular. But "statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (internal quotation marks omitted). Section 2332h is plain on its face; "release" is not ordinarily limited to, as Crawford contends, "a singular explosion which spreads radioactive particles over an area." Appellant's Brief, 16. Even if the statute were not abundantly clear, the legislative history weighs against Crawford in any event. When Congress passed the subsequent statute, § 2332i, it specifically noted that the new statute criminalized several more forms of conduct than § 2332h, and listed those areas. Yet it did not suggest that § 2332h did not already cover radiation dispersal or emitting devices. *See* H.R. Rep. 114-109(I), 2015 U.S.C.C.A.N. 5, 35. The District Court's ruling was thus not erroneous.

B. Counts Two and Three

Crawford was convicted on Count Two of the indictment under 18 U.S.C. § 2332a(a), which makes it a crime for a person who "without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction… against any person or property within the United States." 18 U.S.C. § 2332a(a)(2). The statute defines a weapon of mass destruction to include "any weapon that is designed to release radiation or radioactivity at a level dangerous to human life." 18 U.S.C. § 2332a(c)(2)(D). Count Two charged that from about the summer of 2012 to June 18, 2013, Crawford and others conspired to "use a weapon of mass destruction, specifically a modified industrial grade x-ray system designed to release radiation at a level dangerous to human life" against persons and property in the United States. Appendix, 103.

Crawford was convicted on Count Three under 18 U.S.C. § 842(p)(2)(A), which makes it unlawful for any person "to teach or demonstrate the making or use of… a weapon of mass

4

destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of a… weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence." 18 U.S.C. § 842(p)(2)(A). Count Three charged that from April 2012 through June 18, 2013, Crawford "did knowingly teach and demonstrate the making and use of a weapon of mass destruction." Appendix, 103.

Crawford argues that these statutes do not apply because they refer to "weapons of mass destruction." His x-ray device, he claims, falls outside the definition of such a weapon because, among other reasons, it did not rely on an explosive force to "release" radioactivity, and the device was not designed to release radiation at life-threatening levels. For the reasons discussed above, we reject Crawford's argument regarding the definition of "release." As for the weapon's design, Crawford clearly sought to build a device that could release radiation capable of mass murder, and stated as much on multiple occasions. Crawford thus fails to establish error, much less plain error, with regard to the application of these statutes.

## III. Whether the District Court Improperly Allowed the Introduction of Evidence Regarding Crawford's Alleged Ties to the Ku Klux Klan and of Discrete Portions of His Recorded Conversations

Crawford challenges the District Court's evidentiary rulings at trial. He argues that the Court abused its discretion in admitting evidence concerning his ties to the Ku Klux Klan and in permitting the government to play only selected portions of the full audio and video recordings that were admitted into evidence.

We review the District Court's evidentiary rulings for abuse of discretion. *United States v. Rosemond*, 841 F.3d 95, 107 (2d Cir. 2016). "A District Court has abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence… or rendered a decision that cannot be located within the range of permissible decisions" *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations and quotation marks omitted). "We will reverse only if an error affects a 'substantial right,' meaning that the error 'had a substantial and injurious effect or influence on the jury's verdict.'" *Id.,* quoting *U.S. v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (internal quotation marks omitted).

A. Ties to the Ku Klux Klan

Crawford argues that the District Court abused its discretion by denying his motion to preclude evidence regarding his association with the Ku Klux Klan and opinions of government officials, including former President Barack Obama and New York State Governor Andrew Cuomo. He contends that the cumulative effect of the District Court's decision to allow the evidence was highly prejudicial to his right to a fair trial and violated his First Amendment rights by using his protected speech and conduct as evidence of criminal liability.

We conclude that the District Court did not abuse its discretion. The evidence to which Crawford objects was relevant and probative. For example, at his first meeting with one of the undercover agents, Matthews, Crawford presented a business card from his Klan organization as a means of establishing his credentials, and he later turned to the Klan as a central part of his efforts to gather resources for his x-ray device. Crawford points to *United States v. Padilla*, 869 F.2d 372 (8th

Cir. 1989), where the Court held that evidence regarding defendants' dealings with the Klan should have been suppressed because it "was not relevant to any issue at trial" and "created a real danger of prejudicing the jury." But in *Padilla*, where the defendants were on trial for drug trafficking, the reference to the Klan membership of targeted buyers had no probative value. That is not the case for Crawford.

Crawford also argues that the evidence allowed by the District Court violated his First Amendment rights by offering proof of his "abstract beliefs" merely to demonstrate that he is "moral[ly] reprehensib[le]." *United States v. Kane*, 452 F.3d 140, 143 (2d Cir. 2006) (internal citations omitted). But the government did not introduce evidence of his Klan membership and views merely to impugn his character; those factors went to the heart of the case. While courts must prevent the government "from employing evidence of a defendant's abstract beliefs… when those beliefs have no bearing on the issue being tried," *Dawson v. Delaware*, 503 U.S. 159, 168 (1992), that is manifestly not the context here.

### B. Playing Selected Portions of Audio and Video Recordings

Crawford contends that the District Court violated the rule of completeness and Federal Rule of Evidence 106 by allowing the government to introduce allegedly incomplete and misleading segments of his recorded conversations with government agents. Crawford claims that since his defense rested on the notion that he never intended to use the x-ray device and was merely the technical expert, allowing the jury to see and hear the entire conversations would have bolstered his case.

Once again, we conclude that the District Court did not abuse its discretion. To begin with, Rule 106 likely does not apply here, since the complete audio and video recordings for each meeting and call were submitted into evidence. *See, e.g., United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1995) (noting that the rule of completeness only applies to omitted statements). The government also provided defense counsel with the portions of the evidence that it intended to play for the jury, leaving no reasonable impression that it planned to play the full recordings. Moreover, the District Court invited Crawford to identify other passages he wanted played at trial, but he declined to do so, insisting that the tapes must be played in their entirety. It was well within the District Court's discretion to reject that contention.

## IV. Crawford's Claim that the District Court Erred in Refusing to Charge the Jury with the Defense of Renunciation

Crawford argues that the District Court erred by refusing to charge the jury with the defense of renunciation. We conclude that there was no error.

We review a district court's refusal to provide requested jury instructions *de novo*. *United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005). "We will vacate a conviction only if the instruction that was sought accurately represented the law in every respect and only if viewing as a whole the charge [actually] given, [the defendant] was actually prejudiced." *Id.* (internal quotation marks and citations omitted). We need not decide whether renunciation is not a defense because Crawford never renounced and ended his plot. Although he expressed occasional protestations and doubts—none of which amounted to a full renunciation by any ordinary meaning of the term—he continued to pursue various parts of the scheme at all times until the moment of his arrest.

6

**V. Crawford's Claim that the District Court Erred in Refusing to Grant a Motion to Dismiss for Counts One and Two**

In his pre-trial omnibus motion, Crawford moved to dismiss Counts One and Two of the indictment based on their legal and facial insufficiency. Crawford claims that the indictment was duplicitous because it combined two crimes into one count. *See* Fed. R. Crim. P. 7(c)(1). Crawford did move to dismiss Counts One and Two, but he did not do so on the basis of alleged duplicity. As a result, we review his present claim for plain error. Substantially for the reasons cited by the District Court, we conclude that there was no plain error.

**VI. Crawford's Claim that the District Court Erred in Refusing to Dismiss Count One as Unconstitutionally Vague**

Crawford challenges the constitutionality of Count One of the indictment on the ground that § 2332h, which prohibits the "use, or… threat[ened]… use of radioactivity-releasing devices," is void for vagueness. He argues that the statute is void for vagueness because it does not include a definition of the term "use."  We review his challenge *de novo. United States v. Morrison*, 686 F.3d 94, 103 (2d Cir. 2012). Substantially for the reasons cited by the District Court, we conclude that the ordinary meaning of the word "use" in the context of this statute does not render it vague.

**VII. Crawford's Claim That the District Court Erred in Its Sentencing Enhancement**

Crawford challenges the District Court's application of 18 U.S.C. § 2332(g)(5) under the Federal Sentencing Guidelines. § 3A1.4. He contends that since the terrorism enhancement defines the federal crime of terrorism as, in part, seeking to influence or affect the conduct of the government, the enhancement should not apply to him because he did not seek to do so.

We review the application of the Guidelines *de novo*, while reviewing the factual determinations underlying that calculation for clear error. *Rowland*, 826 F.3d at 116. Substantially for the reasons stated by the District Court and upon review of the record, we conclude that the application of the terrorism enhancement was not erroneous.

**CONCLUSION**

We have considered all of appellant's arguments and find them to be without merit. Accordingly, the December 19, 2016 decision of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7