17-3194-cr
*United States v. Ngono*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty.

PRESENT:    PIERRE N. LEVAL,
               JOSÉ A. CABRANES,
               RAYMOND J. LOHIER, JR.,
                      *Circuit Judges.*

---

UNITED STATES OF AMERICA,

            *Appellee,*               17-3194-cr

            v.

ANDRE MARIE NGONO, AKA Luc O. Ndi, AKA Luc Owono Ndi, AKA Luc Ndi,

            *Defendant-Appellant.*

---

**FOR APPELLEE:**                    Michael D. Longyear and Karl Metzner, Assistant United States Attorneys *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

**FOR DEFENDANT-APPELLANT:**     André Marie Ngono, *pro se*, Folkston, GA.

Appeal from a September 27, 2017 judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant André Marie Ngono ("Ngono"), *pro se* with standby counsel, was convicted of theft of government funds, aggravated identity theft, wire fraud, student financial aid fraud, and immigration fraud. The Government's theory of the case was that shortly after Ngono, a citizen of Cameroon, arrived in the United States, he used the identity of Luc Ndi Owono to enroll in college and obtain federal student financial aid, unemployment insurance benefits, and immigration benefits under the Deferred Action for Childhood Arrivals program ("DACA"). Ngono testified that his name was "Luc Ndi," and that he was given the name "André Ngono" by an international criminal slave trade organization which brought him to the United States and provided him with free housing and education in exchange for five years of his salary. Ngono, *pro se* on appeal, raises a number of issues challenging his conviction and sentence. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

## I.     Ngono's Closing Argument

Ngono claims he was denied "the right to [a] closing argument" when the District Court unexpectedly reduced the duration of his summation from one hour to fifteen minutes, and that its interruptions and sidebar conferences during his closing denied him a fair trial and vitiated his defense.

"'A district court has broad discretion in limiting the scope of summation, and a court's decision [to do so] … will not be overturned absent an abuse of discretion. There is no abuse of discretion if the defendant cannot show prejudice.'" *United States v. Lee*, 834 F.3d 145, 161 (2d Cir. 2016) (quoting *United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001)). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks, alteration, and citations omitted); *see also In re City of New York*, 607 F.3d 923, 943 n.21 (2d Cir. 2010) (explaining that "abuse of discretion" is a nonpejorative "term of art"). In addition, a court "must be and is given great latitude in controlling the duration . . . of closing summations. [It] may limit counsel to a reasonable time[.]" *Herring v. New York*, 422 U.S. 853, 862 (1975).

Although the District Court interrupted Ngono's closing argument on several occasions, it did so with good reason. Ngono attempted to discuss details that were irrelevant or had not been testified to. Similar to district courts sustaining objections during a closing argument if a defense

attorney risks confusing the jury "by implicating facts about which the jury heard no testimony," the District Court here sought to focus Ngono's argument on relevant issues and facts in the record. *Bautista*, 252 F.3d at 145. A court may exercise discretion in fulfilling its "obligation . . . to ensure a fair and orderly procedure in the closing arguments to the jury." *United States v. Cardascia*, 951 F.2d 474, 485 (2d Cir. 1991). The District Court did not abuse its discretion in interrupting Ngono's closing argument by attempting to conform his comments to relevant facts in the record.

Neither did the District Court abuse its discretion by limiting the duration of Ngono's closing argument. The District Court warned Ngono several times that it would limit his time if he persisted in discussing topics that were either not in the record or irrelevant. But Ngono continued to disregard those cautions. Ultimately, after its last warning, the District Court permitted him fifteen more minutes to finish. Instead of completing his summation, Ngono chose to abruptly conclude his presentation. Here too, the District Court did not abuse its discretion by attempting to focus Ngono's closing argument on admitted evidence, and eventually limiting the time allotted, as Ngono was not adhering to the District Court's instructions.

## II.     Jury Instructions

Ngono argues that the District Court erred when it: (1) failed to instruct the jury on his good faith and coercion affirmative defenses; (2) gave contradictory instructions about theft and fraud (which are mutually exclusive); and (3) gave the instruction that the Government does not have to use any particular investigative techniques.

"[W]e review a properly preserved claim of error regarding jury instructions *de novo,* but we will reverse only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Calderon*, 944 F.3d 72, 90 (2d Cir. 2019) (internal quotation marks omitted). A defendant challenging a jury instruction must demonstrate that: (1) he requested a charge that "accurately represented the law in every respect" and (2) the charge delivered was erroneous and prejudicial. *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (internal quotation marks omitted).

If a defendant fails to object to a jury instruction at trial, however, a plain error standard of review applies on appeal. Fed. R. Crim. P. 30(d), 52(b). "For plain error, we must find (1) error, (2) that is plain, and (3) that affects substantial rights; if these three conditions are met, we have discretion to notice the forfeited error only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dorvee*, 616 F.3d 174, 180 n.2 (2d Cir. 2010). When a defendant "objects only generally to the issuance of a jury instruction, and not to the specific language used by the District Court, the objection to the formulation of the charge is not preserved." *United States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013); *see* Fed. R. Crim. P. 30(d) ("A party who objects to any portion of the instruction or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury

retires to deliberate."). In such cases, we review the challenge to the language of the jury charge for plain error. *Ghailani*, 733 F.3d at 52.

### A. Coercion and Good Faith Affirmative Defenses

At the charge conference, Ngono asked the District Court to charge his coercion affirmative defense because his testimony demonstrated that he "work[ed] without pay." The Government pointed out that there was no evidence that he was coerced to fill out financial aid applications, unemployment benefit applications, and DACA relief applications, or that he was coerced to use Luc Ndi's name and social security number. The District Court agreed and stated that it would not charge the coercion defense. Ngono did not object; the District Court's refusal to give the charge is therefore reviewed for plain error.

"A defendant is entitled to an instruction on an affirmative defense only if the defense has a foundation in the evidence." *United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005) (internal quotation marks omitted). Three elements must be satisfied in order for a defendant to establish coercion: "(1) a threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in the illegal activity." *Id.* "A defendant must make some showing on each element, including the element that the defendant lacked a reasonable means to escape the threatening conduct by seeking the intervention of the appropriate authorities." *Id.* (internal quotation marks omitted).

The District Court did not plainly err in refusing to charge a coercion defense because Ngono did not satisfy any of the three *Gonzalez* elements. He did not demonstrate that: (1) the international criminal organization threatened or forced him to use Luc Ndi's name or social security number or to fraudulently complete applications in order to receive various benefits; (2) the alleged threats induced in him a well-founded fear that he would suffer "death or serious bodily injury" if he refused to comply with the demands of the organization; and (3) he had no reasonable opportunity to escape harm other than by complying with the organization's threats. Rather, he testified that he was required by contract to give five years of his salary to the criminal organization that brought him to the United States and, in exchange, the organization would pay for his rent and meals. Accordingly, the District Court did not err in denying Ngono's request to charge a coercion affirmative defense.

At the charge conference, Ngono also asserted that the District Court should charge a good faith defense because he had not personally filled out any of the applications that allowed him to obtain funds and benefits and, thus, was unaware that they had been completed fraudulently. The District Court determined there was no basis in the evidence to include a good faith charge. However, it instructed the jury that a defendant has no burden to establish a defense of good faith, and the burden of showing lack of good faith and criminal intent rested with the Government. After

4

the District Court informed Ngono that it would not charge a good faith defense, Ngono attempted to persuade the District Court otherwise.

To the extent Ngono's argument for charging the good faith defense after the District Court decided not to charge it can be considered an objection—thereby warranting *de novo* review—the District Court did not err. The District Court communicated the essence of a good faith defense in its discussion of the intent to defraud element of wire fraud. We have previously ruled that a separate good faith defense instruction is unnecessary if the District Court explains that it is the Government's burden to prove beyond a reasonable doubt the elements of knowledge, intent, and consequent lack of good faith. *See United States v. Doyle*, 130 F.3d 523, 540–41 (2d Cir. 1997) (upholding refusal to include a separate good faith charge because the court's willfulness charge captured the essence of a good faith defense). For those reasons, the District Court did not err in declining to charge a good faith affirmative defense.

## B. Instructions Concerning Theft and Fraud

Ngono contends that the jury instructions as to his fraud and theft counts (Counts One through Four) were erroneous because, in *Bastion-Mojica v. Sessions*, 716 F. App'x 45 (2d Cir. 2017) (non-precedential summary order), we ruled that a simultaneous conviction for theft and fraud was "impossible," as fraud requires an element of consent, while theft does not. Thus, he could not have been convicted of both "mutually exclusive" crimes because an owner of property "cannot consent and voluntarily surrender his property" (referencing fraud), and also "not consent to voluntarily surrender the same property at the same time" (referencing theft).

Ngono did not object to the instructions on the fraud and theft charges in Counts One through Four, much less make a specific objection to any particular language in the instructions based on the allegedly mutually exclusive crimes of theft and fraud. He does not argue on appeal that the District Court erred in describing the elements of any of the charges. Accordingly, Counts One through Four are reviewed for plain error, and a review of those jury charges reveals no such error.

Ngono's argument based on *Bastian-Mojica* is meritless. At issue in that case was whether a Connecticut fourth-degree larceny conviction qualified as an aggravated felony theft offense under the immigration statutes. Because both the Second Circuit and the Board of Immigration Appeals ("BIA") had not resolved the issue, the case was remanded to the BIA for further consideration. 716 F. App'x at 46. *Bastian-Mojica* is inapplicable to the federal theft and fraud statutes at issue here, and Ngono does not otherwise provide any authority for his position based on the federal statutes at issue.

5

### C. Instruction Concerning "A Particular Investigative Technique"

At the charge conference, Ngono generally objected to the District Court's proposed instruction that: "You should also recall my earlier instruction during jury selection that the government does not have to use any particular investigative technique." He did not explain the basis for his objection, and the District Court overruled it. Ultimately, the District Court charged the jury that, "You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

Because Ngono did not provide the "grounds" or otherwise explain the basis for his objection, he did not preserve it on appeal, and it is reviewed for plain error. *See Ghailani*, 733 F.3d at 52; *see also* Fed. R. Crim. P. 30(d). The argument he now makes is that the District Court erred because it should have added that the law requires particular investigative techniques in cases of "severe forms of trafficking in persons," such as requiring the Department of Justice to "develop special training programs where appropriate law enforcement personnel are technically trained for effective methods on how to identify and investigate crimes of severe forms of trafficking in persons." Ngono provides no authority for this proposition.

We have held that a district court does not commit error in instructing the jury that the Government has no legal obligation to use any particular investigative technique in preparing its case. *See United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) (per curiam) ("[T]he [G]overnment has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and . . . the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."). The District Court did not err in giving this instruction.

### III.    Prosecutorial Misconduct

During its closing argument, the Government told the jury that Ngono "lied" to get student loans, unemployment benefits, and immigration benefits. The Government contended that Ngono assumed Luc Ndi Owono's identity in order to steal tens of thousands of dollars, and that during trial he was still holding himself out to be Luc Ndi. The Government also told the jury that Ngono's argument—that he never received any of the unemployment insurance or federal student aid and that the criminal human trafficking organization that brought him from Africa to work in New York as a slave was paying for him to go to college so he could manage a business—was "absurd, almost laughable." Shortly thereafter, the Government said, "This man has been lying for 10 years and he came into this courtroom and he lied again. Ladies and Gentlemen, the lies stop today." Ngono did not object during the Government's summation. On appeal, Ngono asserts that he was denied his right to a fair trial and the Government committed misconduct by calling him a liar during closing argument.

Assuming those remarks were inappropriate, "[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985). Reversal of a conviction due to prosecutorial misconduct is only warranted if it causes the defendant "substantial prejudice," *United States v. LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991), that "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted); *see also United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999). We consider the following factors in evaluating whether prosecutorial misconduct caused substantial prejudice: "(1) the severity of the alleged misconduct; (2) the curative measures taken; and (3) the likelihood of conviction absent any misconduct." *United States v. Locascio*, 6 F.3d 924, 945–46 (2d Cir. 1993). When a defendant fails to object to the summation at trial, we "will not reverse absent flagrant abuse." *United States v. Zichettello*, 208 F.3d 72, 103 (2d Cir. 2000) (internal quotation marks omitted).

In this case, Ngono's credibility was at issue. He asked the jury to believe his testimony that he was Luc Ndi and that he worked as a slave laborer for an international criminal organization, as a defense to the crimes with which he had been charged. Because the true identity of Ngono was in dispute, as well as the auspices under which he received those funds, the Government properly commented on his untruthfulness. *See United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." (internal quotation marks omitted)); *accord Shareef*, 190 F.3d at 79; *United States v. Peterson*, 808 F.2d 969, 976–77 (2d Cir. 1987). Moreover, the Government's use of the words "lie," "lied," and "lying" was not excessive; its statements were measured, rather than inflammatory, and it provided examples from the testimony ("[t]he defendant lied. His fingerprints don't"; "[t]he defendant lied throughout [his DACA application] and he obtained authorization as a result of that application"; "[Ngono] has been lying for 10 years and he came into this courtroom and he lied again"). Other than generally arguing that the Government committed misconduct, Ngono does not explain how these comments may have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process," *Coriaty*, 300 F.3d at 255 (internal quotation marks omitted), or caused him "substantial prejudice" to warrant reversal.

**IV. Ngono's Sentence**

Ngono argues that the District Court should not have applied a two-level upward enhancement under U.S.S.G. § 3C1.1 for obstruction of justice because he objected to it and therefore, the District Court was required to make "a finding of specific intent." In addition, the District Court never found that he committed perjury. Ngono contends that, as a result, his guideline offense level and sentence of imprisonment should have been lower. At sentencing,

Ngono objected to the enhancement, arguing that he had "been consistent in everything" and said "from the beginning to the end that [he] . . . is Ndi, Luc[.]"

"In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris,* 192 F.3d 290, 293 (2d Cir. 1999). Thus, "if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case" as moot. *United States v. Blackburn,* 461 F.3d 259, 261 (2d Cir. 2006) (quoting *United States v. Quattrone,* 402 F.3d 304, 308 (2d Cir. 2005)).

Ngono has already served his 48-month term of imprisonment, and is currently in immigration detention. He was not sentenced to a term of supervised release. A "post-release sentencing correction cannot alleviate injury that resulted from [an] earlier incarceration," and Ngono has not established another "continuing or imminent concrete injury" emanating from his judgment to invoke the jurisdiction of the federal courts. *United States v. Ben Zvi,* 242 F.3d 89, 99 (2d Cir. 2001). Because he has already served the entirety of his sentence and there is no possibility of the District Court imposing a reduced term of supervised release—as he was not sentenced to one—his challenge to his sentence is moot. *See United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007) (sentencing appeal was moot because appellant had been "release[d] from prison" and the district court could not "impose a reduced term of supervised release").

**CONCLUSION**

We have reviewed all of the arguments raised by Ngono on appeal and find all of them to be without merit. Accordingly, we **AFFIRM** the September 27, 2017 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8